## John A. McLennan

*v.*

## William V. Johnston.

1. Mistake—*misdescription of lands conveyed.* When lands, verbally agreed to be sold, are found misdescribed, or other lands are described instead, a court of chancery will order a proper conveyance.

2. Parol evidence is competent to fix the intention of parties.

3. STATUTE OF FRAUDS. The fact that the intention of parties is shown by parol evidence of the original agreement, does not bring the case within the statute of frauds, when the proceeding seeks, not the specific performance of an executory contract, but the correction of a mistake in an executed contract.

4. And parol evidence may be received to show a mistake in a written instrument, whether required by the statute of frauds to be in writing or not.

5. NON-JOINDER—*parties.* A grantee who, having title by a wrong description, sells a portion of his purchase, following the erroneous description, must, in seeking relief against his own grantor, make his own grantee a party defendant. Omission to do so is fatal.

6. RE-CONVEYANCE. He should also tender a reconveyance, and the court, in decreeing the correction of the original error by a new deed, should require him to return the title he erroneously received.

APPEAL from the Circuit Court of Cook county ; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. JAMES S. MURRAY, for the appellant.

Messrs. BRAINARD & CALKINS, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court :

In March, 1870, the appellant, McLennan, was the owner of two sub-lots, one described as the south 50 feet of lot 18, and the other as the south 50 feet of the north 100 feet of lot 23—both situated in the same block, the former fronting *east*, and the latter *west*.

Both pieces had been previously purchased from the appellee, Johnston, and McLennan finding himself unable to meet the payment of an unpaid portion of the purchase money about to fall due, an arrangement was made between the parties, whereby Johnston bought back one of the lots at a fixed price. Some weeks after this arrangement was made, it was perfected (as was supposed at the time) by the execution of a deed from McLennan to Johnston, and receipt of the consideration.

Subsequently, Johnston, as he claims, discovered a mistake in the description of the lot in the deed, it being described as

the south 50 feet of the south 100 feet of lot 23, when it should have been described the south 50 feet of lot 18, and to correct this alleged mistake, this bill was filed by Johnston on the 13th day of September, 1870.

McLennan, in his answer, alleges that, since the execution of the deed, the complainant had altered the description in it from the south 50 feet of the *north* 50 feet of lot 23, to the south 50 feet of the *south* 100 feet of lot 23, and that by reason of such fraudulent alteration, complainant ought not to receive any relief from a court of equity.

Undue pains, as seems to us, have been expended to fix upon the complainant a fraud in this respect. There is no doubt that a change was made in the word indicated, after the deed was written, by an alteration of the letter " N " to " S."

The deed, after having been drawn up, was sent to McLennan to execute, who testifies that he examined the deed in the presence of two room mates of his, and the alteration had not then been made, and his two room mates testify to the same, saying they read the deed. The deed was written by one Munson, at the request of Johnston, as the latter testifies, and that after being drawn, Munson handed it to him, and upon looking at it, as his eye fell upon the word " North," he instantly discovered a mistake, as there was no word north in the description of the lot he had bought, it being the south 50 feet of lot 18, and named it to Munson, who immediately altered the letter " N " to " S." Munson testifies to the same fact, that he himself made the alteration at the time, before the deed went out of his possession. McLennan did not own the south 50 feet of the *south* 100 feet of lot 23, but did own the south 50 feet of the *north* 100 feet.

No motive has been suggested, and we can conceive none, which should have induced Johnston to fraudulently change the description from a piece of ground that McLennan did own, to one that he did not own. We feel satisfied, from the evidence, that this alteration was made with innocent intent, before the execution of the deed.

As to the alleged mistake, the parties directly oppose each other in their testimony, Johnston testifying that the subject of the purchase and sale was the east front, the south 50 feet of lot 18 ; and McLennan, that it was the west front, the south 50 feet of the north 100 feet of lot 23. The deed appears to have been prepared on the part of Johnston, and sent to McLennan for execution, and executed by the latter out of the presence of Johnston.

Munson testifies that he was temporarily occupying an office with Johnston ; that the latter requested him to make out the deed, handing him an abstract for the purpose; that he made one out for the south 50 feet of lot 18, as he believes ; that Johnston called his attention to an error he had made in the amount of an incumbrance he was to assume, being double the true amount; that witness then destroyed that deed ; that subsequently, on another day, Johnston renewed his former request to draw the deed, and witness took the abstract and made out the deed in question, Johnston being out of the office, as he recollects, at the time the deed was drawn ; that Johnston came in somewhat in haste ; remarked that witness had made another mistake; that it was the " south," instead of the " north ;" that witness took the deed and made the alteration in that respect, in the manner which has before been adverted to; that Johnston then took the deed and put it in his pocket, without reading it, as witness thinks.

The abstract, which appears in evidence, contains a description of both pieces of land, with the names of the same parties ; the east front lot, the south 50 feet of lot 18, being at the bottom of the first page of the abstract, and the west front lot, the south 50 feet of the north 100 feet of lot 23, at a corresponding place on the second page ; and Munson explains that the way the mistake occurred, was in copying the description on the second page of the abstract, instead of the one on the first page ; that he was not particularly acquainted with the property. He states that Johnston had made a pencil mark on the abstract

against the south 50 feet of lot 18, as the lot to be included in the deed. That pencil mark so appears upon the abstract.

Johnston gives substantially the same testimony as Munson upon the same points.

It appears in evidence that Deverell, the trustee in the original trust deed from McLennan to Johnston, was present at the time of the delivery of the deed from the former to the latter, and released the deed of trust, at which time McLennan offered to sell him his remaining lot for $1000. McLennan says that this was the east front, the south 50 feet of lot 18. Now he admits that was higher ground and more valuable than the west front which he claims he sold to Johnston; and Johnston testifies that in his sale to McLennan, but a short time before, a difference of $5 a foot was made in the price of the lots, the east front being sold at $30 per foot, and the west at $25; and that, in buying back the east front, he paid the same amount as the difference in value between the two fronts, and $100 in addition, and there is no contrary testimony as to this comparative difference in value.

Now, it is not in exact harmony, that McLennan should sell the west front lot, the inferior one, to Johnston for $1300, the price he admits he got for it, and, at the same time, offer to sell the more valuable one to Deverell for $1000. We may fairly take $250 as the difference in value, from the evidence, and if the latter lot was worth but $1000, Johnston, as the fair value of the other, should have paid only $750 instead of $1300. This indicates that it was the west front lot, the inferior one, which McLennan then offered to sell to Deverell, as the latter clearly so understood.

Turner, a clerk in the office of Johnston, testifies to a conversation between the parties, about the middle of May, as he thinks, when a check was given by Johnston to McLennan, and that he heard them talking about $5 more for the east front than for the west front; and to another one, in the latter part of June or July, when Johnston told McLennan there

was a mistake in the deed; that he had deeded him the wrong front. And McLennan replied there was no mistake; that he intended to deed him the east front, and he had done so.

Upon a review of all the testimony, we are satisfied with the correctness of the finding of the court below, of the existence of the mistake as alleged, and with the decree for its correction.

The statute of frauds was set up, and is relied on, in defense.

It is true, the bill alleges that the defendant entered into a verbal agreement with the complainant for the sale and conveyance of the lot in question, and prays the defendant may be ordered to specifically perform the agreement. It also sets forth that the defendant, affecting to comply with the agreement, pretended to convey the lot, but that, through ignorance or mistake, or fraudulently and wrongfully, he conveyed a different one.

The bill is not properly one to enforce the specific performance of an executory contract, but to correct a mistake in an executed one, and parol evidence may be received to show a mistake in a written instrument, whether it is one given in the case of a contract required by the statute of frauds to be in writing or not. The statute does not apply to such a case. Adam Eq. 85, 169, and cases collected in notes; also cases cited in note to *Woolburn* v. *Hearn*, 2 Lead. Cas. Eq. 570.

It appears, however, that, on reception of the deed from McLennan, Johnston directed a deed to be made out to one Miss Quincy, of the south 30 feet of the lot described in the deed, which was done, and the deed executed by Johnston. We think Miss Quincy should have been made a party, in order that she might be bound by the decree, so that McLennan might not hereafter be exposed to a liability to her, on the covenants contained in his deed to Johnston. It would have been proper, too, to have required Johnston to release to McLennan all claim to the lot embraced in that deed.

For want of a necessary party, the decree is reversed and the cause remanded, with leave to amend the bill by adding parties, and for further proceedings in conformity with this opinion.

*Decree reversed.*