LEWIS SCHWASS

*v.*

HATTIE E. HERSHEY *et al.*

*Filed at Ottawa October 2, 1888.*

1.  FRAUD OR MISTAKE—*in written contract—relief in chancery—parol evidence.* While the rule in courts of law is, that the written instrument is better evidence of the intention of the parties than can be furnished by parol proof, and that the writing, therefore, in contemplation of law, contains the true agreement of the parties, courts of equity will, if justice requires it, look beyond the writing, and grant relief from the effect of a contract entered into or founded in mistake or induced by fraud.

2. In such case, resort may be had to parol evidence to establish the true contract, which, when found by the court, may be enforced by appropriate decree.

3. Where a purchase and sale are of property other than that described in the agreement and actually conveyed, and the purchaser is induced, by fraud, to part with his money for property different from his purchase, a court of equity has the power, on bill filed, to declare the true agreement, and grant relief, either by reforming the deed or by compelling specific performance of the real contract.

4. Where it is sought to establish a contract, by parol, different from that evidenced by an agreement in writing, entered into between the parties, the proof should be clear and satisfactory. In such case, the presumption is in favor of the written contract, and its terms must control, unless it is. clearly and satisfactorily established, not only that the written instrument incorrectly states the agreement, but the contract sought to be substituted must be definitely and clearly shown.

Appeal from the Circuit Court of Carroll county; the Hon. John V. Eustace, Judge, presiding.

This was a bill in chancery, in the Carroll circuit court, filed by appellant, Schwass, against Hattie E. Hershey, Andrew H. Hershey, L. Sherman Bowen and Thomas Skipper, alleging that he purchased of Hattie E. Hershey and said Bowen a lot of ground, now included in L. S. Bowen's addition to the city of Savanna, in said county, and being all of lot 7 and part of lot 5 in the plat of said addition, for $125, and that only lot 7 was conveyed to him by said vendors, and that lot 5 was afterwards conveyed to the .defendant Skipper, who forcibly took possession of the whole of said lot, including the portion thereof purchased by complainant; that he was induced, etc., by the fraud of the defendant Bowen, to accept said deed, and to enter into the contract therefor, etc. The bill prayed that the plat recorded by said defendants Hattie E. Hershey and Bowen, and the deed made by them to Skipper, so far as the same affects the rights or clouds the title of complainant, be removed, abrogated and held for naught, and that the said complainant be fully assured in his title to and possession of said premises, and that said defendants be restrained and enjoined from in-

terfering with or disturbing the complainant in his lawful use and possession of said premises. Answers were filed denying the material allegations of the bill. Upon hearing, the bill was dismissed, and the complainant prosecutes this appeal.

It appears that Mrs. Hershey and Bowen were owners of an irregular-shaped piece of land adjoining said city, upon which there was a spring. Early in May, 1883, Schwass went to look at the ground, and being unable to find any stakes or boundaries, called on Bowen, who told him it had not been surveyed, but it would be in a few days. Shortly afterwards, Schwass sent Mr. Jacobs to Mr. Bowen. Bowen then told Jacobs that Schwass could have the whole tract for $175, or the larger lot of the tract, upon which was the spring, for $125. Jacobs asked Bowen for a diagram of the tract, which Bowen then made in pencil, on a scrap of paper, substantially as follows:

On the following Sunday, Jacobs and Schwass visited the land, and found it, as they say, staked off,—that is, stakes driven into the ground at the corners of lots. The land owners platted this tract, with adjoining lands, as L. S. Bowen's addition. The county surveyor surveyed the land, laid it off into

lots, and platted it, on the 10th and 11th days of May, 1883.
The whole addition, as platted, will be seen in the following
diagram, the ground claimed by complainant being that part
of lot 5 lying south of lot 7, included in dotted line:

On the 1st day of June, 1883, the parties entered into a
written contract of purchase, by which the vendors bound

themselves to convey to Schwass, lot 7, as shown on the plat of said addition, upon payment by him of $125, as therein stipulated. On December 1, 1883, full payment having been made, a deed to said lot 7 was made and delivered to Schwass. It appears that the contract was really made on the 26th of May, but dated June 1, as it had to be sent away for execution by Mrs. Hershey. There is a conflict as to what then occurred, Bowen testifying that he exhibited the plat to Schwass, telling him that the lot he was getting was lot 7, on which the spring was. This, Schwass denies. On the 16th day of August, 1884, Hershey and Bowen sold lot 5 to defendant Skipper. Up to that time Schwass had not fenced, but in the evening of the day of Skipper's purchase he put a wire fence on the line claimed by him, through lot 5, which Skipper tore down, and afterwards erected a board fence between lots 5 and 7, on the line as shown in the plat.

Mr. JAMES M. HUNTER, for the appellant:

Courts of chancery have full authority and power to restrain parties from unlawful interference with the rights and property of others, and to hear and determine bills to quiet title, and remove clouds from the title to land, whether occupied or improved, or not; and more particularly should they do so when, by fraud or overreaching, parties seek to take or destroy property lawfully owned and possessed by another.

Mr. JAMES SHAW, and Mr. D. S. BERRY, for the appellees:

Where oral proof is relied on to establish contracts different from the written ones entered into, the proof must be very clear and satisfactory in order to change or reform the written contracts or deeds. *Allen* v. *Webb*, 64 Ill. 342; *McCornack* v. *Sage*, 87 id. 484; *Peck* v. *Arehart*, 95 id. 113; *Chase* v. *Debolt*, 2 Gilm. 371; *Enos* v. *Hunter*, 4 id. 218; Bishop on Contracts, 707, 708.

The rule is substantially the same where mistakes are alleged to have been made in deeds or written contracts. The

42—125 ILL.

evidence of the mistake must be clear and convincing,—almost irrefragible,—and the strongest possible. *Sapp* v. *Phelps*, 92 Ill. 588; *Hamlow* v. *Sullivant*, 11 Bradw. 423; *Hunter* v. *Bilyeu*, 30 Ill. 228; 2 Pomeroy's Eq. Jur. 324, 331.

When contracts are sought to be changed or reformed on account of mistakes, the mistakes must be mutual, and be made by both parties. *Sutherland* v. *Sutherland*, 69 Ill. 482; *Wilson* v. *Byers*, 77 id. 76; Bispham's Eq. 244, 246.

Where specific performance is sought to be enforced, the rule is the same. It requires clear, satisfactory and almost irrefragible proof to authorize the change of the terms of a written contract deliberately entered into. *Bowman* v. *Cunningham*, 78 Ill. 48; *Trailor* v. *Hill*, 2 Gilm. 364; *McCornack* v. *Sage*, 87 Ill. 484; *Fleischman* v. *Moore*, 79 id. 539; *Brink* v. *Steadman*, 70 id. 241.

If one carelessly execute a contract without reading it or having it read to him, equity will not interfere to help him out. 2 Pomeroy's Eq. 322, note 1; 42 Iowa, 107.

It is negligence in the signer of an instrument to trust the statements of a person seeking his signature, as to the character of the instrument, and if he places confidence in him, it is at his peril. Daniel on Neg. Inst. sec. 850; *Dekamp* v. *Hamer*, 29 Ohio St. 467; *Chapman* v. *Rose*, 56 N. Y. 138; *Douglas* v. *Matting*, 29 Iowa, 498.

Antecedent verbal agreements and talks are all merged in the written agreement when made. *Fitzgerald* v. *Staples*, 88 Ill. 234; *Pickrel* v. *Rose*, 87 id. 265.

Where it is doubtful if the agreement alleged to have been concluded was made, no reformation or change can be made by a court of equity. *Race* v. *Weston*, 86 Ill. 91; *Hamlow* v. *Sullivant*, 11 Bradw. 426.

A much stronger case must be made to set aside an executed contract than to enforce an executory one. 3 Parsons on Contracts, 415, note.

Mr. Justice Shope delivered the opinion of the Court:

The bill seeks to enforce the equitable right of complainant to a part of lot 5, in L. S. Bowen's addition to the city of Savanna, derived, as it is claimed, by virtue of his contract of purchase thereof. It is averred in the bill, and shown, that the contract was made May 26, 1883, but it is not shown that any representations were then made of the area of the lot purchased by complainant. The contract was reduced to writing as of June 1, 1883, and by reference thereto it is seen that the lot agreed to be conveyed, is "known and described as lot No. seven (7), in block No. one (1), in L. S. Bowen's addition to the city of Savanna," and by the same description is conveyed to complainant by deed dated December 1, 1883. Lot 7, on its eastern boundary, is one hundred and sixty-four feet in length, but complainant contends that his purchase included a piece of land of the same width of lot 7, and abutting that lot on the south, sixty feet on its eastern boundary, and, practically, thirty feet on its west line.

It is not contended that any representations were made by Bowen, with whom the contract of purchase was made by appellant, by which appellant was misled as to the description of property inserted in the written contract or in the deed. Appellant knew, aside from the fact that the description was shown on the face of the contract and deed, that the premises were described therein as lot 7 in said addition. But the contention is, that by the representations of Bowen, prior to the making of the contract, appellant was induced to believe that by the description inserted in the contract he was getting all of the tract of land included in lot 7, and the abutting piece before described.

In the view we take of the case, no analysis of the bill will be necessary, farther than to state, that without seeking to reform the deed, it seeks to compel a specific performance as contended for by appellant, and a conveyance of that portion

of lot 5 in said addition described as abutting on lot 7, to appellant, and to remove as a cloud the deed made to defendant Skipper. The doctrine is well settled, that while the rule in courts of law is, that the written instrument is better evidence of the intention of the parties than can be furnished by parol proof, and that the writing, therefore, in contemplation of law, contains the true agreement of the parties, courts of equity will, if justice requires it, look beyond the writing, and grant relief from the effect of a deed or contract, if entered into or founded in mistake or fraud. In such cases, resort may be had to parol evidence to establish the true contract, which, when found by the court, may be enforced by appropriate decrees. 1 Story's Eq. Jur. 153, 161, 768; *Gillespie* v. *Moore,* 2 Johns. Ch. 585; *Hunter, Admr.* v. *Bilyeu et al.* 30 Ill. 228.

If, by the contract between these parties, the purchase and sale were of the tract of land claimed by appellant in his bill, and he was induced, by the fraud of Bowen, to part with his money and accept a contract in writing, and subsequently a deed, for another and different tract of land, there is no want of power in a court of equity, upon proper bill filed, to declare the true agreement and grant relief, either by reforming the deed or by compelling specific performance of the real contract. The policy of the law, however, is to require evidence of title to real estate to be in writing, that nothing may be left to the frailty of the memory, or as a temptation to the commission of perjury; hence, where it is sought to establish a contract, by parol, different from that evidenced by a written contract entered into between the parties, the proof should be clear and satisfactory. (1 Story's Eq. 157, note; *Miner* v. *Hess,* 47 Ill. 170; *Sapp* v. *Phelps et al.* 92 id. 588; *Allen* v. *Webb et al.* 64 id. 342.) The presumption is in favor of the written instrument, and that it is the true and full expression of the intention of the parties in respect of the subject matter to which it relates; and the contract thus expressed will control, unless it is clearly and satisfactorily established, not only that the

written instrument incorrectly states the agreement of the parties, but the contract sought to be substituted must be definitely and clearly shown.  This would be so if appellant was induced to accept the written contract by the fraud of Bowen, for while the fraud might be inferred from circumstances affording a sufficiently strong presumption of fraud to satisfy the conscience of the chancellor, (1 Story's Eq. Jur. 190,) appellant will still be required to clearly and satisfactorily establish the contract really entered into, and with such certainty and definiteness that the court could declare and enforce it. This, we are of opinion, the chancellor was warranted in finding had not been done by this complainant.

It appears that Bowen and Hershey owned the land now designated as block 1, in L. S. Bowen's addition to the city of Savanna, and that about May 1, 1883, Schwass applied to Bowen to know the price of the tract of land on which "the spring" was situated.  Bowen then told him the land "was not surveyed yet, and that he must wait."  Shortly after this Mr. Jacobs called on Bowen, at the instance of Schwass. Bowen testifies (and is corroborated by many circumstances,) that the survey and plat had not then been made.  Jacobs was told that he could have the larger lot for $125, or the smaller lot for $75, or both for $175.  It is difficult to understand what was meant by this designation of the lots not yet surveyed, and comprising only the north end of the tract which it was proposed to plat, unless it be stated that said tract on the north had a frontage of two hundred feet on Van street, which ran north-easterly and south-westerly, thereby making the west line of the tract shorter than the east line thereof. If the north end of the tract was so laid off that it was divided into two lots by a line through the middle, north and south, each lot would have an equal frontage on Van Street; but if the south end of the lots was run at right angles to the east line, as seems substantially to have been indicated in the diagram made for Jacobs by Bowen, the east lot would be the

larger of the two. At the interview mentioned, between Jacobs and Bowen, Jacobs requested Bowen to draw a diagram of the tract, which Bowen did upon a scrap of paper. The particular fraud insisted upon is, that by this diagram the larger lot had, on its east line, the figures "236," and thereby Schwass was misled into supposing that he was purchasing a lot the east line of which would be two hundred and thirty-six feet long, and was induced to part with his money therefor upon that belief, induced by the act of Bowen in making said diagram, whereas, without notifying him of any change in the size of the lots, the conveyance was made of lot 7, which has on its eastern boundary only one hundred and sixty-four feet. It is apparent that very shortly after the making of this diagram the survey and plat were made, for on the next Sabbath after the interview between Jacobs and Bowen, Schwass testifies that he went upon the land, and found the lot staked off. It is not pretended that there were stakes on the tract other than those set by the surveyor who platted the addition. The survey and plat were made May 10 and 11, and although the plat was not recorded until June 14 following, it was in Bowen's possession from the time of its completion.

As before said, the contract was made May 26, 1883, and at that time, it is shown by appellant's testimony, the diagram given by Bowen to Jacobs, and by Jacobs to him, was not present, or in any way alluded to by any of the parties. Nor was anything said by either party in reference to the size of the lot contracted to be conveyed, or that could have apprised Bowen that Schwass was relying on said diagram, or upon any representation previously made. Schwass says he bought this lot because it was larger and had the spring on it. On the other hand, Bowen, who, so far as shown by this record, is of equal credit with Schwass, testifies, that at the time of the purchase he produced to Schwass the plat made by the surveyor, upon which the size of lot 7 is designated in figures, and sold him the lot as designated on that plat. Early in

May, Schwass was told the land was to be surveyed. Shortly afterward he found stakes designating the boundaries of lots, which were not there at his first examination of the grounds. On the diagram upon which he claims to have relied, the lot was not designated by number, so that when Bowen told him he would sell him lot 7 for $125, on which the spring was situated, it would seem strange that he would not at least inquire if the lots were the same, if he had in his mind the lot as described in the diagram. There was no assurance or suggestion by any one that they were the same, and no question in respect thereof was asked by appellant. The evidence of Bowen is strongly corroborated by the written contract and deed. The deed was, as we have seen, made and accepted by appellant long after the plat had been placed of record. All of the payments were made by appellant, under his contract, after the recording of the plat, except the sum of $10. Appellant, at no time prior to the sale to Skipper, in the summer of 1884, went into the actual occupancy of the tract of land in question. After the sale to Skipper, and after lot 5 had been measured off to him, appellant took possession of that part of lot 5 claimed by him, by building a wire fence on the line he contends for; but for over a year after his purchase no possession had been taken or claim made to the abutting tract described, so far as shown by this record.

We do not think it can be said that it is clearly and satisfactorily shown that the written contract and deed do not correctly express the contract of the parties; nor does the preponderance of the evidence establish fraud on the part of Bowen, by which appellant was induced to make and enter into the written contract of purchase. It must be said, if it be conceded that appellant entered into the contract and accepted his deed under a misapprehension of the amount of land he was getting, it was through his own negligence. By inquiry he could readily have ascertained the amount of land that lot 7 contained. The means were at hand by reference

to the plat.　He knew, as we have seen, that he was contracting for lot 7, and it is not shown that any artifice was employed or untrue representations made by the vendors to induce appellant to make the purchase.

The decree of the circuit court dismissing the bill was correctly entered, and will be affirmed.

*Decree affirmed.*