## Joseph Vial, Appellee, v. Norwich Union Fire Insurance Society of Norwich, England, Appellant.

### Gen. No. 16,457.

1. CONTRACTS—*right of third person under contract made for his benefit.* Where a contract is made between two persons for the benefit of a third, such third person may maintain an action in his own name to enforce such contract in so far as his interests are involved.

2. CONTRACTS—*terms of written contract are controlling as to rights of third person.* Where a contract between two persons for the benefit of a third is in writing, the terms expressed in the writing are presumed to be the terms of the contract as made and are controlling as to the rights of a third person whose interests are involved.

3. REFORMATION OF INSTRUMENTS—*jurisdiction of equity to reform insurance policy.* Equity will in a proper case rectify a mutual mistake made in the terms of a contract of insurance and will retain jurisdiction to enforce it, as between the parties to it and their privies, according to its terms as rectified.

4. REFORMATION OF INSTRUMENTS—*necessary parties on bill to reform.* Equity will not reform a contract for mutual mistake unless all the parties to it who have any interests that may be affected by the reformation and all persons who have acquired rights or assumed obligations under it are in court as parties.

5. REFORMATION OF INSTRUMENTS—*necessity that company reinsuring risk have knowledge of mistake.* Before a fire insurance policy can be reformed in equity for mutual mistake, as against a company that has reinsured the risks of the original company, it must appear by the averments in the bill and by proof that the reinsuring company had actual or constructive notice or knowledge of the mistake at the time the reinsurance agreement was made, or that such company has estopped itself from relying on a want of knowledge or notice.

6. REFORMATION OF INSTRUMENTS—*when insurance policy cannot be reformed.* Where a fire insurance company reinsured the risks of another company, as then covered by policies, according to the terms and conditions of the policies, a policy cannot be reformed for a mutual mistake of the original company and insured as to the buildings insured, where it was not averred or proved that the defendant had any notice or knowledge of the mistake, or that it was estopped from resisting the reformation so as to increase its liability on its contract of reinsurance.

Vial v. Norwich U. F. Ins. S. of Norwich, England, 172 Ill. App. 134.

7. REFORMATION OF INSTRUMENTS—*when insurance company not* *estopped to object to reformation of policy.* On a bill to reform a fire insurance policy for a mutual mistake, as to the buildings insured, against a company that reinsured the risks of the original company, the fact that the original company had paid a loss on buildings not specifically covered by the policy will not estop the defendant from objecting to the reformation, where the averment as to such prior loss did not show that it was not covered by the policy and there was no averment or proof that either company had any knowledge or notice prior to the reinsurance contract that such prior loss was not covered by the policy.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed and remanded with directions. Opinion filed August 12, 1912.

BARGER & HICKS, for appellent.

LYMAN, LYMAN & O'CONNOR, for appellee.

MR. JUSTICE GRAVES ·delivered the opinion of the court.

The Indemnity Fire Insurance Company, of New York, through its agents, Higley & Yager of Chicago, on October 13, 1905, issued its policy of insurance to one Joseph Vial, the appellee in this case. Among other things, the policy contained the following:

"No. 130,702.  STOCK COMPANY.  $1,700.00
Indemnity
Fire Insurance Company
of New York.

In consideration of the stipulations herein named and of seventeen and no/100 dollars premium does insure Joseph Vial, for the term of three years from the thirtieth day of October, 1905, at noon, to the thirtieth day of October, 1908, at noon, against all direct loss or damage by fire, except as hereinafter provided,

To an amount not exceeding seventeen hundred dollars to the following described property while located

and contained as described herein, and not elsewhere, to-wit:

DWELLING FORM.

$1,700.00—On the frame dwelling and additions, adjoining and communicating, including foundations, gas and water pipes and connections, permanent heating apparatus, grates, mantels, tiling, plate, stained and ornamental glass, fresco work and wall decorations, gas and electric fixtures, fixed mirrors, book cases and sideboards and all other fixtures set or built in walls, porches, verandas, window and door screens, storm doors, awnings and all permanent fixtures belonging thereto and contained therein; also on sidewalks and fences in front of and surrounding the premises situate on Lots 7 and 8 of the First Addition to West Chicago, a sub-division of that part of the West ½ of the S. E. ¼ of Section 9, north of Vial road (so called) also described as Lots 7 and 8 of A. A. Adair's Sub-division of Lots 5, 6, 7 and 8 in Section 9, T. 38, N. R. 12, Cook county, Ill., being south of La Grange, Illinois. * * *

"Loss or damage, if any, under this policy, shall be payable to Chicago Title & Trust Company, mortgagee (or trustee) or successor in· trust, as interest may appear. * * * "

The policy was delivered by the· agents of the company to one David B. Lyman, Jr., who was the attorney and agent of Vial in obtaining the loan from the Chicago Title & Trust Company.

On May 1, 1907, a reinsurance agreement was entered into between the Indemnity Fire Insurance Company of New York and the Norwich Union Fire Insurance Society of Norwich, England, which agreement was, in part, as follows:

"This agreement made this first day of May, 1907, between the Norwich Union Fire Insurance Society of Norwich, England, hereafter known as the 'Norwich Union,' and the Indemnity Fire Insurance Co. of New York, hereafter known as the 'Indemnity,' in consideration of the sum of one dollar by the parties hereto

to the other paid, the receipt of which is hereby acknowledged.

"Witnesseth, That the 'Norwich Union' agrees to reinsure from 12 o'clock M., standard time, on above date at the place where the property insured is located, all unexpired fire and lightning risks located in the United States, for the amounts not heretofore reinsured, *now covered by policies and contracts issued* by the 'Indemnity' *according to their terms and conditions* and to pay all losses thereon occurring after the last mentioned hour, and to pay all adjusting and other expenses arising from such risks and all return premiums upon the cancellation of policies enumerated in the schedules."

The Indemnity Fire Insurance Company ceased doing business in the state of Illinois on May 11, 1908, and has done no business in Illinois since that date.

On August 11, 1908, a horse barn, frame crib, frame granary, wagon house, ice house and additions thereto, located on the premises, described in the policy issued by the Indemnity Fire Insurance Company of New York, was struck by lightning and destroyed by fire as a result.

The Indemnity Fire Insurance Company of New York, and the Norwich Union Fire Insurance Society of Norwich, England, were each notified of the destruction of the buildings and demand was made on each of such companies that they pay the loss. Each of the companies refused to comply with this demand or pay the loss on the ground that the buildings destroyed were not covered by the policy issued by the Indemnity Fire Insurance Company of New York, whereupon Joseph Vial, the appellee in this case, filed his bill in chancery, making the Norwich Union Fire Insurance Society of Norwich, England, the sole defendant. The foregoing facts are appropriately set out in the bill and in addition thereto it is averred that, prior to the time the policy of the Indemnity

138    APPELLATE COURTS OF ILLINOIS.

Vial v. Norwich U. F. Ins. S. of Norwich, England, 172 Ill. App. 134.

Company was issued, it was expressly understood between appellee and the agent of the company that such policy should cover all the improvements on the premises described, but that by mistake of the scrivener who prepared the policy, the buildings to be insured were not all included or properly described in it; that the policy was never delivered to him in person, and that he did not know or have any intimation that all the improvements on the premises were not properly covered by the express terms of the policy until after August 11, 1908, the date on which part of them were destroyed by fire.

It is further averred that in March, 1907, part of the improvements on the premises were damaged by fire to the extent of $59, which amount was afterwards and on April 4, 1907, adjusted and paid to appellee by the Indemnity Fire Insurance Co. of New York.

It is also averred in the bill that some slight error exists in the description of the premises on which the improvements in question were located, but as we view the matter there is nothing in that averment that will be necessary to discuss in the determination of this case.

The relief prayed for in the bill is that the policy issued by the Indemnity Fire Insurance Company of New York may be corrected so as to fully describe the premises and property intended to be covered by it, and that the Norwich Union Fire Insurance Society of Norwich, England, may be decreed to pay to appellee or the Chicago Title & Trust Company the sum of $1,641, the amount of the policy, after the $59 paid on the former loss is deducted from the amount of the original insurance. The Circuit Court entered a decree granting the relief prayed.

It is undoubtedly the law that often, where a contract is made between two persons for the benefit of a third, such third person may maintain an action in his own name to enforce such contract in so far as his

interests are involved. Dean v. Walker, 107 Ill. 540; Bay v. Williams, 112 Ill. 91; Webster v. Fleming, 178 Ill. 140; Cobb v. Heron, 180 Ill. 49; Harts v. Emery, 184 Ill. 560; Robinson v. Holmes, 75 Ill. App. 203.

Such contract can, however, only be so enforced as the same was made by the parties to it, and where it is in writing the terms expressed in the writing are presumed to be the terms of the contract as made (Schwass v. Hershey, 125 Ill. 653), and are controlling as to the rights of third persons whose interests are involved, as well as to the rights of the parties to it. Sickmon v. Wood, 69 Ill. 329; Harms v. Coryell, 177 Ill. 496-504; Hayden v. Franklin Life Ins. Co., 136 Fed. 285-294-295; Kansas Mutual Life Ins. Co. v. Whitehead, 123 Ky. 21.

It is also undoubtedly true that where a mutual mistake is made in the terms of a contract of insurance a court of equity will in a proper case between the proper parties rectify the mistake under the same rules and circumstances as a mutual mistake in any other kind of a contract would be rectified, and when it is so rectified such court will retain jurisdiction to enforce it as between the parties to it and their privies, according to its terms as so rectified. Mercantile Ins. Co. v. Jaynes, 87 Ill. 199; Home Ins. Co. v. Myer, 93 Ill. 271; Continental Ins. Co. v. Ruckman, 127 Ill. 364; German Fire Ins. Co. v. Gueck, 130 Ill. 345; Gray v. Merchants Ins. Co., 113 Ill. App. 537; Ballance v. Underhill, 3 Scam. 453.

Before a court of equity assumes to reform a contract for mutual mistake, all the parties to it, who have any interests that may be affected by the reformation of it, and all persons who have acquired rights or assumed obligations under it, must be in court as parties. Hellman v. Schneider, 75 Ill. 422; Mead v. Altgeld, 136 Ill. 298; Sickmon v. Wood, 69 Ill. 329; Moore v. Munn, 69 Ill. 591; Dorman v. Brereton, 140 Ill. 153; McLennan v. Johnston, 60 Ill. 306.

140    APPELLATE COURTS OF ILLINOIS.

Vial v. Norwich U. F. Ins. S. of Norwich, England, 172 Ill. App. 134.

Before a contract can be reformed in a court of equity for mutual mistake as against persons not parties to it, but who have rights or liabilities that would be affected by its reformation, it must appear by the averments in the bill and by the proof that such persons are not innocent parties. It must be averred and proven that such persons knew or had notice, either actual or constructive, of the mistake sought to be reformed at the time he acquired his interest or incurred his liability. (Sickmon v. Wood, 69 Ill. 329; Harms v. Coryell, 177 Ill. 496-504; Barton v. Mayers, 183 Ill. 360-362; Russell v. Ranson, 76 Ill. 167), or that such third person has by some act, stipulation or agreement estopped himself from relying on the want of knowledge or notice of such mistake, as a means of protecting his interests.

Authorities from other jurisdictions have been cited by appellee, some of which seem to be in conflict with the principle above announced, while others when understood are in harmony therewith. Feeling bound, as we do, to adhere to the principles laid down by the authorities of our own state above cited, all of which are in harmony, we do not feel that any useful purpose would be subserved by elaborately distinguishing these cases from those of foreign jurisdictions.

There is neither averment nor proof that appellant had any notice or knowledge of the claimed mutual mistake sought to be corrected by the bill in this case. Neither is there any act, stipulation or agreement averred or proven that should estop it from resisting an attempt to correct or modify the contract between the Indemnity Insurance Company and appellee, so as to increase the liability of appellant on its contract with the Indemnity Company. On the contrary, by the terms of the contract between appellant and the Indemnity Company, appellant undertook to reinsure only such property as was *then covered* by policies and contracts *issued* by the Indemnity Company, *according*

*to the terms and conditions of such policies and contracts as so issued,* not according to some secret terms and conditions not made known to appellant and of which it had no notice.

It is insisted by appellee that the fact that the Indemnity Company paid a loss of $59 to him in 1907 on certain buildings not specifically covered by its policy should estop appellant from now objecting to the reformation of this contract so as to include the buildings burned on August 11, 1908. That position is not tenable for several reasons. There is no averment or proof that either appellant or the Indemnity Company knew, or had any notice prior to the making of the contract between them, that the $59 loss was not on the building actually and in terms covered by the policy as written. The mere fact that a loss had been paid under the policy in no way tends to suggest that there had been a mutual mistake in the writing of it. If any inference could arise from such payment, it would be that the policy was regular in all respects. In fact, the averment in the bill as to the payment of that $59 loss is merely that a loss to that amount had been paid on "part of the improvements hereinabove described," which description includes the building that was in terms covered by the policy, and seems to have been inserted for the sole purpose of showing that the amount of the policy that was still in force when appellant entered into the contract with the Indemnity Company was less by $59 than the amount for which it was originally issued, for after averring that the original policy was for $1,700.00, and the payment of $59 on a prior loss asks for a decree against appellant for $1,641, the exact amount of the policy still in force, and no relief is prayed for in the bill based on the averment of the payment of the $59. Under the averments in the bill and the facts disclosed by the proof, appellee is not entitled to have the policy reformed against appellant.

Even if the bill had averred and the proof had shown that appellant had full knowledge of all the facts known to the Indemnity Company, still we think the decree would have to be reversed, because the proof of a mutual mistake falls far short of the convincing character requisite to warrant a finding that a mutual mistake was made in drafting the policy. .

While it is very likely true that appellee intended to have the policy written, as he says, it is apparent that there was no mistake on the part of the Indemnity company. If appellee has any redress in this matter, it certainly is not by way of correcting a mutual mistake in the policy.

The decree of the Circuit Court is, therefore, reversed and the cause is remanded to that court with directions to dismiss the suit for want of equity in the bill.

*Decree reversed and remanded with directions to dismiss bill.*