(No. 11097.—Decree affirmed.)

HARRIET J. STRAIN *et al.* Appellants, *vs.* EVAN A. HINDS *et al.* Appellees.

*Opinion filed February 21, 1917—Rehearing denied April 5, 1917.*

1. INFANTS—*when deed made after becoming of age does not repudiate deed made during minority.* A deed made with the intention and for the purpose of confirming a deed made during minority does not amount to a repudiation of the earlier deed because of a difference in the grantees, where such difference is the result of fraud of the agent procuring the later deed in substituting his partner as joint grantee with himself in place of his partner's wife, who was joint grantee with the agent in the earlier deed.

2. SAME—*affirmative act not necessary to ratify deed of minor.* An intention to confirm a deed made during minority is not necessary, and if there is no affirmative action by the minor amounting to a repudiation within the time allowed by law after the grantor has attained majority the title of the grantee will be good.

3. TRUSTS—*what facts establish a constructive trust.* Where a real estate firm holding minors' deeds to one partner and the other partner's wife conveys the property to a purchaser and promises to secure deeds from the minors after they have attained majority, but instead of naming the purchaser as the grantee in the deeds intended to ratify the earlier deeds name the two partners as grantees and by an exchange of deeds put the title in one of the partners, who holds it until his death, a court of equity will establish a resulting trust in favor of the first purchaser, who has been in open possession of the land for twenty-six years and has expended a large amount of money on improvements.

4. DEEDS—*purpose for which a deed is given may be shown by parol.* Where a minor has executed a deed and after becoming of age makes another deed to the same property but naming as one of the grantees a person not named in the former deed, it is proper to prove by parol whether the subsequent deed was meant to repudiate or confirm the former deed.

APPEAL from the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding.

WALTER T. GUNN, (CASPAR PLATT, of counsel,) for appellants.

O'HAIR & RHOADES, and ACTON & ACTON, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellants, Harriet J. Strain and Elizabeth S. Richards, filed this bill in the circuit court of Vermilion county against appellees, Evan A. Hinds and Harvey Hinds, seeking the partition of eighty acres of land described and situate in said county and claiming to be the owners in fee of said land subject to the estate of Evan A. Hinds, who, it was alleged, had an estate in said lands for the life of Mary M. Brown. Harvey Hinds was the tenant in possession of the premises in controversy. Evan A. Hinds (who will hereafter be referred to as appellee) answered the bill, denying appellants were entitled to the relief prayed for and

claiming to own the land in fee simple. He also filed a cross-bill, alleging A. G. Strain, the party through whom appellants claim title, acquired deeds to the property in controversy in fraud of the rights of appellee, and prayed that the court order a deed made to appellee conveying to him the complete legal and equitable title to the premises. The cross-bill also set up the Statute of Limitations as a bar to the action. Issue being joined upon the bill, cross-bill and answers thereto, the cause was heard by the chancellor, who dismissed the original bill for want of equity and granted the relief prayed in the cross-bill. Appellants have perfected this appeal from such decree.

We have deemed it unnecessary to set out at length the allegations of either the bill or cross-bill or the answers to the same, since the rights of the parties to this litigation depend solely upon the legal effect to be given the following facts, circumstances and conveyances, about which there is practically no dispute.

In 1883 William Vanneman was the owner of the eighty acres the title to which is now in dispute, and on November 3, 1883, he and his wife conveyed the same to his daughter, Mary M. Brown, "for and during her natural life and then to the heirs of her body." March 11, 1889, Mary M. Brown and husband conveyed the premises by warranty deed to A. G. Strain and I. W. Lewis, wife of T. C. Lewis. May 13, 1889, A. G. Strain, widower, quit-claimed his interest in the premises to I. W. Lewis. September 18, 1889, Ruth M. Brown and Martha H. Brown, the only children of Mary M. Brown, both being minors and unmarried, executed a quit-claim deed conveying their interest in said premises to I. W. Lewis. September 26, 1889, I. W. Lewis and her husband, T. C. Lewis, for a consideration of $3200, conveyed the premises to appellee by warranty deed. January 27, 1892, Ruth M. Brown executed a quit-claim deed, reciting her to be a *feme sole* above the age of eighteen years, purporting to convey her interest in the premises in

controversy to A. G. Strain and T. C. Lewis. January 18, 1893, Martha H. Brown made a like deed, containing like recitals, to A. G. Strain and T. C. Lewis. April 5, 1895, T. C. Lewis and wife, I. W. Lewis, quit-claimed their interest in the premises to A. G. Strain. May 10, 1910, A. G. Strain died testate, naming appellants, his widow and sister, as sole legatees under his will of all his real and personal estate.

Appellants, upon the theory that the execution of the deeds by Ruth M. Brown and Martha H. Brown, after their becoming of age, to A. G. Strain and T. C. Lewis operated as a repudiation of their deed to I. W. Lewis made during their minority, filed their bill in this case, alleging the only interest of appellee in the premises was the life estate formerly owned by Mary M. Brown, and claiming to be the owners of the fee by virtue of the will of A. G. Strain, the deed to Strain by T. C. Lewis and wife, I. W. Lewis, dated April 5, 1895, and the deeds of Ruth M. Brown and Martha H. Brown to A. G. Strain and T. C. Lewis, dated, respectively, January 27, 1892, and January 18, 1893.

It is conceded the deed by Vanneman to Mary M. Brown in 1883 gave her a life estate in the lands with a vested remainder in her two daughters, Ruth and Martha, subject, however, to be opened up to let in after-born heirs of like description. None were afterwards born. The deed by Mary M. Brown and her husband to A. G. Strain and I. W. Lewis in 1889 conveyed to them but the life estate of Mary M. Brown. Strain shortly thereafter quit-claimed his interest to I. W. Lewis, giving to said I. W. Lewis an estate in the lands for the life of Mary M. Brown. The two remainder-men, Ruth and Martha Brown, were minors, but on September 18, 1889, they executed a quit-claim deed to I. W. Lewis purporting to convey their interest in the land. This conveyance was admittedly voidable by the grantors upon their arriving at legal age or at any time

within three years thereafter. Eight days later, September 26, 1889, I. W. Lewis and her husband, T. C. Lewis, by warranty deed conveyed the premises to appellee for $3200, which was all that the fee of the land was worth at that time.

The effect of the two quit-claim deeds of Ruth and Martha Brown, dated January 27, 1892, and January 18, 1893, respectively, to A. G. Strain and T. C. Lewis, husband of I. W. Lewis, is the sole question to be determined in this case, appellants contending such deeds amounted to a repudiation of their deed given, as minors, to I. W. Lewis, and the appellee insisting such deeds were given for and amounted to a confirmation of the deed given as minors, and that the grantees in such deeds given after they became of age held the legal title in trust for appellee.

The depositions of Mary M. Brown, her husband, William D. Brown, and Martha H. Brown Veale, were read in evidence. The daughter Ruth Brown is now dead. The mother, Mary M. Brown, testified she lived in Long Beach, California; that in 1889 A. G. Strain and T. C. Lewis, then real estate men in Long Beach, traded to her California property for the eighty acres in controversy; that at the time of the trade it was agreed the girls, Ruth and Martha, should sign a deed as minors, with the promise of the girls that as soon as they became of age they would make Strain and Lewis deeds to confirm and make their former deed good. Ruth and Martha were at that time about sixteen and fifteen years of age, respectively; that Strain was present at the time of these negotiations; that soon after the girls became of age, in 1892 and 1893, Strain came to see them at the witness' home and had them execute the deeds to Strain and Lewis to make the first deed signed by them legal; that Lewis was in Indiana at the time.

Martha H. Brown Veale testified she remembered the exchange of property between her mother and Strain and Lewis, and that it was agreed she and her sister should

make a deed as minors and when they became of age they should make deeds to legally close the deal or in confirmation of the former deed; that afterwards, upon the arrival at age of her sister, Ruth, and later when the witness became of age, Strain brought deeds to the witness and her sister already prepared and said they were to confirm the deed previously made by them; that the deeds were signed upon that statement of Strain without reading them, to ratify the deed made as minors. The witness further testified that neither she nor her sister did any act after becoming of age to disaffirm their deed as minors, and that neither she nor her sister received anything for signing the second deeds.

William D. Brown testified, in substance, to the same circumstances, stating Strain had the deeds all prepared when he brought them for the girls to sign when they became of age, and that all understood such deeds were to confirm and legalize the former deed they had made as minors; that in the original transaction Strain and Lewis wanted to sell the property, and asked the girls to give a minor's deed, with the promise that they would give other deeds when they became of age.

It will be noticed the deed given by the girls while minors, September 18, 1889, was to I. W. Lewis, who had at that time acquired the interest Strain took under the deed of March 11, 1889, from Mary M. Brown and husband. Negotiations were at this time pending between T. C. Lewis, the husband of I. W. Lewis, and appellee for the sale of the land, and the warranty deed of I. W. Lewis and T. C. Lewis to appellee was dated September 26, 1889. Appellee paid the full market value for the land at that time. John Keenan, a witness for appellee, testified he was present when T. C. Lewis sold the land to appellee; that they consulted a lawyer, and Lewis said he would get a deed from the two girls; that afterwards, in about ten days, the parties again met, and Lewis gave appellee the deed of the two

girls made before they were of age; that appellee then paid
Lewis the consideration and received his deed for the land,
and that Lewis then promised to get deeds from the girls
after they became of age. T. C. Lewis was acting as agent
for his wife, I. W. Lewis, at this time for the sale of the
land. By his promise he obligated his wife to secure the
deeds of the minors upon their becoming of age. He not
only obligated his wife, but, being a party to the deed, ob-
ligated himself as well. He was a member of the real es-
tate firm of Lewis & Strain, which purchased the land, tak-
ing the title in the name of his wife and A. G. Strain, and
was a member of such firm when Strain secured the quit-
claim deeds from the girls after they became of age. These
deeds were made to A. G. Strain and T. C. Lewis, the
members of the real estate partnership, which no longer
had any interest in the premises, and which by the testi-
mony of the mother, Mary M. Brown, the father, William
D. Brown, and the daughter, Martha, it appears were so-
licited by Strain and given by the daughters, Ruth and
Martha, for the purpose of confirming the deed given by
them when they were minors. Why Lewis and Strain did
not have these quit-claim deeds made direct to appellee does
not appear, nor does it appear why Lewis and his wife,
some two years after the quit-claim deeds were executed
and some six years after the conveyance to appellee, con-
veyed their interest under such deeds to Strain. Both T. C.
Lewis and Strain are dead and the whereabouts of I. W.
Lewis is unknown.

The deed of the two minors was voidable, only, and not
void. (*Burnham* v. *Kidwell,* 113 Ill. 425; *Keil* v. *Healey,*
84 id. 104.) They did not, after becoming of age, know-
ingly or intentionally repudiate the deed, but the evidence
clearly shows their deeds given after they became of age
were intended for the purpose of ratifying the deed exe-
cuted while they were minors. The repudiation or affirma-

tion by an adult of a voidable contract entered into while a minor involves the concurrence of an act and an intent. (*Davidson* v. *Young*, 38 Ill. 145; *Sayles* v. *Christie*, 187 id. 420.) The intention to revoke was not present here but the intention was to confirm. The latter act was not necessary, however, for the title, in the absence of any affirmative action by the minors upon their becoming of age, would now be good in appellee. (*Tunison* v. *Chamblin*, 88 Ill. 378; 14 R. C. L. 226; 4 Elliott on Contracts, sec. 3810.) Such color of title, therefore, as T. C. Lewis and A. G. Strain took under the deeds of Martha and Ruth Brown after they became of age was procured by representing that the deeds were desired to confirm the deed made by them while minors, and in equity the grantees held the title in trust for appellee. T. C. Lewis had promised appellee to secure the deeds from the girls when they became of age. He had given appellee their deed made while minors. Both Lewis and Strain had secured the promise of the girls to make deeds after they became of age, and Strain had called upon them and secured their deeds in pursuance of their promise. We think the facts clearly establish a constructive trust in favor of appellee. (*Beach* v. *Dyer*, 93 Ill. 295; *Pope* v. *Dapray*, 176 id. 478; Perry on Trusts, secs. 166, 215.) It cannot be said Strain did not have knowledge of facts sufficient to make him liable with Lewis as trustee holding the legal title for appellee.

Appellants insist that part of the depositions of Mary M. Brown, Martha H. Brown Veale and William D. Brown which tends to show that the deeds made by Ruth and Martha Brown after they became of age, to T. C. Lewis and A. G. Strain, were not a disaffirmance but a ratification of the deed made by them to I. W. Lewis during minority, was incompetent. The purpose for which a deed was given may be shown by parol; (*Schwass* v. *Hershey*, 125 Ill. 653; *Sutphen* v. *Cushman*, 35 id. 186; *Reigard* v. *McNeil*, 38

id. 400; *Knowles* v. *Knowles,* 86 id. 1; *Pearson* v. *Pearson,* 131 id. 464;) and whether a deed was procured through a trick or fraud practiced on the grantor may be proved by the grantor. It was proper, therefore, to prove whether the two deeds made by the Brown girls were made to confirm or repudiate the former deed made by them while minors. Proof of the intention of Ruth and Martha Brown was clearly admissible, for if there was no intent to repudiate their voidable deed made as minors there was no repudiation.

The proof shows appellee has been in the open, uninterrupted and continuous possession of the premises for more than twenty-six years and has made improvements on the land worth approximately $5000. He paid the full value for the property at the time he purchased it, under assurances that his grantor would secure deeds from the Brown girls when they became of age confirming their deed made while minors. The girls had promised they would make such deeds and Strain knew of such promise, and upon their arriving at the age of eighteen years, respectively, he called upon them with deeds already prepared, which he represented were intended to confirm their former deed, as they had agreed. Relying upon such representations of Strain and not intending to repudiate their former deed but to confirm and ratify the same they executed the deeds. It would be a reproach to the law if it were too feeble to prevent the consummation of the scheme by Strain and Lewis to secure title to the fee by such means, against a man who had, under the circumstances shown by the evidence, bought and paid the full value for the land.

The decree of the circuit court was right, and it is affirmed.                                    *Decree affirmed.*