(No. 30333.—

MILTON CURTIS, Admr., *et al.*, Appellees, *vs.* ROBERT CURTIS *et al.*—(ROBERT CURTIS, Appellant.)

*Opinion filed November 20, 1947.*

ELMER H. DROSTE, of Mt. Olive, and H. B. TUNNELL, of Litchfield, for appellant.

ALVIN G. WHITEHOUSE, of Gillespie, and RINAKER, SMITH & HEBRON, of Carlinville, for appellees.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

Jennie H. Curtis died intestate November 11, 1946. Milton Curtis, her son, was appointed administrator of her estate and on January 28, 1947, petitioned the county court of Macoupin County for authority to sell real estate to pay

debts. The petition alleged that the deceased at the time of her death owned the southeast quarter of the northeast quarter of section 1, town 7 north, range 7 west of the 3rd P.M., Macoupin County, Illinois, except coal and minerals thereunder and except one acre out of the southwest corner and about one acre out of the southeast corner thereof.

Jennie H. Curtis left no husband but left her children, Milton Curtis, Lucy A. Smith, Evelyn Smith, John Curtis, Alice Higgins, Sarah Soncek, Katherine Wallace, Robert Curtis and Clara Harbough as her only heirs-at-law. All of the children were made parties to the suit. N. H. (also known as H. N.) Curtis was the husband of Jennie H. Curtis at the time of his death September 29, 1912, and was the father of all the children of Jennie H. Curtis above named. He also died intestate.

On March 15, 1905, G. B. Dorsey executed a bond or contract for deed in favor of N. H. Curtis agreeing to convey to him the above lands upon payment of $1150. This contract although bearing date of March 15, 1905, provided that $350 of the purchase price should be paid on March 11, 1905. The balance of the purchase price was to be evidenced by two promissory notes for $400 each payable in one and two years after March 11, 1905, with interest at the rate of 6 per cent per annum payable annually. Curtis took possession of the premises under the agreement and continued in possession until his death.

On March 15, 1905, Dorsey conveyed the real estate to Wall & Co. On April 4, 1906, Wall & Co. gave a contract for deed to H. N. Curtis agreeing to convey to him the said real estate upon payment to the company of $854 on or before April 4, 1909, plus interest at 6 per cent per annum payable annually. Time of payment was made the essence of the contract. Curtis accepted this contract in lieu of the one theretofore given him by Dorsey and remained in possession of the premises. Neither of the fore-

going agreements excepted the two one-acre tracts from the description.

The defendant Robert Curtis, appellant here, and his sister Katherine answered the petition alleging in substance that their father, by reason of the foregoing agreements, was at the time of his death owner of the equitable title in the premises and that Robert, as an heir of his father, now owned an undivided one-ninth interest therein. The answer further alleged that a quitclaim deed to the premises was executed in favor of the mother by all of the children but Robert; that said deed was purportedly signed and acknowledged by him but that his signature thereto was a forgery and was placed thereon at the express direction of his mother for the purpose of defrauding him of his title as heir of his father.

A reply to the answer denied that Robert had an interest in the premises; admitted the conveyance to the mother and averred that the deed of conveyance was acknowledged by Robert and that more than 25 years elapsed since Robert attained his majority; that the deed was of record and was constructive notice to Robert; that he also had actual knowledge of the execution and delivery of said deed and was guilty of *laches* in failing to take prior action, and because of such *laches* cannot now question the authenticity of said deed.

On June 12, 1914, all of the children and their respective spouses, except Robert, signed a quitclaim deed of the premises to their mother. At the time the deed was executed Robert was 15 years of age and did not sign it. His sister Katherine, at the suggestion of their mother, signed Robert's name thereto, he being in school at the time. When he came home his mother and Katherine both told him that Katherine had signed his name to the deed and he said he thought it was all right because his mother said it was. The house on the premises was destroyed by fire about a year and a half after the father's

death and a short time prior to the date of this deed.

The county court held that because of gross *laches* Robert could not now claim an interest in the premises through inheritance from his father and that his interest was barred by the Statute of Limitations. It then ordered the premises sold to pay debts of Jennie H. Curtis. Robert has appealed to this court seeking a reversal of that order.

Appellant says the only point in dispute is whether he lost his title to an undivided one-ninth of the real estate as heir-at-law of his father through lapse of time or by *laches*. His father did not have the legal title to the premises. His rights therein, if any, existed by reason of the contract for deed. The first contract was superseded by the second. On the back of the latter, interest in the sum of $51.24 is credited for the years 1907, 1908, 1909, 1910 and 1911, respectively. In 1911 an additional interest payment of $51.24 is credited as of October 17 of that year and on the same day $143.26 is credited as principal payment on the contract. As above stated, N. H. Curtis died September 29, 1912. At the time of his death he had not complied with the terms of the contract. He had not paid $854 on or before April 4, 1909. He had only paid $143.26 of the amount. There was still $710.74 due on the purchase price. The daughter Katherine says there was still $854 due after her father's death.

The widow and heirs of Curtis were entitled to whatever equitable interest he had in the premises. What that interest amounted to cannot be ascertained from the record. According to the testimony of Katherine he had paid nothing on the principal. In any event he was badly in default at the time of his death and it is doubtful if he had an enforcible equity. It is fair to assume that the premises were worth the contract price of $854. Appellant admits that the equitable interest of his father was subject to the dower and homestead interest of his mother therein. Apparently the premises were not worth the amount of the

homestead, $1000. The mother borrowed money, paid out the contract and took a deed to the premises in her name from Wall & Co. on September 16, 1914. A new residence was erected thereon and the premises at the time of her death were worth $5500. It was stipulated that it is necessary to sell her interest in the premises to pay debts.

There is no evidence that appellant made any contribution whatever to the purchase price or the balance thereof paid after his father's death nor to the improvements. Certainly he would not be entitled to one ninth of the premises upon their present value. He had a home on the premises with his mother for seventeen years after his father's death. The children all lived in that home until they married and left. Robert left in 1929. John is in possession of the premises at this time.

Had appellant proceeded with diligence upon his father's death to establish an equitable interest in the premises, it is doubtful if he could have then shown any equity therein. There was a substantial sum of money due on the contract and it was badly in default. As time progressed rights and equities of others accrued. The house was destroyed by fire; a new one was built; the premises were mortgaged; evidently two one-acre tracts were sold out of the 40 acres; the mother held the legal title and incurred debts which were unpaid at the time of her death.

Assuming that appellant's father had an equity in the premises at the time of his death and that appellant inherited an undivided one-ninth thereof, can he now assert his rights after such long period of silence with reference thereto? He was 13 years old when his father died; at the time his name was signed to the deed by his sister on June 12, 1914, he was 15 years of age. The record indicates that on July 25, 1914, he acknowledged before a notary public that he signed the deed. The deed was filed for record in Macoupin County September 26, 1914. He became of age in 1920. The petition herein was filed

January 28, 1947, twenty-seven years after he reached majority. His answer to the petition is the first time that he spoke out asserting an interest in the premises. His sister testified by way of conclusion that he always claimed an interest but what interest he claimed, to whom he made claim, or the nature thereof is not shown.

To hold that the appellant has an interest in the premises as heir of his father at this late day, considering all that has taken place since he became of age, and the long period of his silence, would be inequitable. We said in *McKey* v. *McKean*, 384 Ill. 112, at page 126, *"Laches* is not, like limitations, a mere matter of time but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relation of the property and the parties. *Laches* depends on whether, under all the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did. It has been defined to be such neglect or omission to assert a right, taken in conjunction with lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, which will operate as a bar in a court of equity. (*Venner* v. *Chicago City Ry. Co.* 236 Ill. 349.) Where there is such a change in the relations of the parties or such a change in the subject matter of the suit as to render it inequitable to grant relief, it will be refused without reference to the statutory period of limitation."

The appellant relies strongly upon the case of *Hagerman* v. *Schulte*, 349 Ill. 11, as authority for his position that he is not barred because the 20 years' Statute of Limitations has not run since he left the premises in 1929. While that case recognizes the rule that actions asserting titles to land will not be barred by mere delay for any period short of that fixed by the Statute of Limitations, it recognizes the further rule which makes the defense of *laches* available when it says, on page 31, "It is only when

the delay is accompanied by some other element rendering it inequitable to permit the owner to assert his title that *laches* will bar the right within the statutory period of limitation."

Did appellant acknowledge the signature on the quit-claim deed to his mother to be his? His sister Katherine said he did not acknowledge the instrument. He could have acknowledged it without her knowing it. The notary who signed the certificate of acknowledgment did not testify. A certificate of acknowledgment is *prima facie* proof of the execution of the instrument. No proper evidence was produced to overcome that presumption. We said in *Houlihan* v. *Morrissey,* 270 Ill. 66, at page 73, "It has been repeatedly held that the certificate of acknowledgment to a deed is *prima facie* proof of its execution, and while, as between the parties, it may be impeached for fraud, collusion or imposition, to overcome it clear and satisfactory proof is required, and this requires more than the unsupported testimony of the grantor." To the same effect is *Finney* v. *White,* 389 Ill. 374.

If appellant desired to ·repudiate the deed he should have taken some affirmative action to that end within a reasonable time after he became of age. If no affirmative action is taken by a minor amounting to a repudiation of his deed within the time allowed by law after he has attained majority, the title of the grantee will be good. *Strain* v. *Hinds,* 277 Ill. 598; *Keil* v. *Healey,* 84 Ill. 104.

From a careful consideration of the entire record it is our opinion that the decree of the county court is right and should be affirmed.

*Decree affirmed.*