A. H. Waterman, Appellant, v. Estate of William T. Kirk, deceased, Appellee.

### Gen. No. 4,897.

STATUTE OF LIMITATIONS—*when begins to run as to contingent undertaking.* Where a contract provides that performance by the promisor shall take place upon the happening of a certain contingency or the fulfillment of a certain condition, the cause of action accrues and the statute begins to run when the event occurs and the condition is complied with, and not before. The death of the party making the promise, before the contingency happens, does not set the statute in motion in favor of his estate.

Contested claim in court of probate. Appeal from the Circuit Court of De Kalb County; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed March 11, 1908.

CLIFFE & CLIFFE, for appellant.

A. G. KENNEDY, for appellee; A. W. FISK, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

William T. Kirk died on or about March 10, 1900, leaving a last will. On April 6, 1908, a petition for the probate of said will and for a grant of letters testamentary was filed in the County Court of DeKalb county, where said Kirk resided at the time of his death. Over four years later, and on or about June 27, 1904, said will was admitted to probate and on the next day letters testamentary were issued.

The petition for letters stated that the deceased left real estate worth about $10,000 and personal property worth about $300. No inventory of his estate was ever filed. On July 13, 1906, F. B. Townsend filed a claim against said estate in favor of A. H. Waterman for the use of F. B. Townsend in the sum of $415.95, for services performed by A. H. Waterman as an accountant in the case of William T. Kirk v. Mary A. Byers et al. in the Circuit Court of DeKalb county. Said claim was disallowed in the County Court and was taken to the Circuit Court on appeal, where, upon a jury trial, there was a verdict for the estate. A motion for a new trial was denied and the claimant excepted, and the estate had judgment, from which claimant prosecutes this further appeal.

The facts are practically undisputed. From 1873 to 1893 Kirk was a partner with one A. B. Byers in certain real estate transactions. They borrowed money, bought a farm, laid out thereon the village of Kirkland, built a railroad depot, platted the tract into lots, blocks and streets, built sidewalks and made other improvements, and sold lots. They renewed loans and made new loans and paid notes. They kept no books of account. In 1893 Byers died. Kirk desired to commence a suit against the legal representatives of Byers for an accounting. One firm of lawyers made an investigation and reported to him that there was not sufficient data from which to state an account and therefore declined to take the suit. He then went to William C. Kellum, an attorney, and at the latter's suggestion, A. H. Waterman, who was both an attorney and an accountant, was called in to investigate the question whether an account could be stated from the various data of the transactions of the firm which were obtainable. Waterman spent two weeks in searching, and reported that an account could be stated. Kirk then hired Kellum to begin and prosecute a suit for an accounting, and hired Waterman to collect the data and prepare an account of the transactions of the late firm. Kellum filed the bill and prosecuted the suit. Waterman spent about six months in collecting the data and preparing a detailed state-

ment of the account of the financial transactions of the partnership. The case went to a master in chancery, who stated an account with a balance in favor of Kirk, and reported the same to the court. Objections thereto were filed and on March 21, 1900, the docket of the Circuit Court showed that the report of the master was approved and a decree rendered in favor of complainant. Kirk, however, had died on March 10, 1900, and the decree so ordered was not written or entered upon the record, and the cause remained in abeyance on the docket for several years, during which period Waterman assigned his claim to Townsend. Thereafter on June 11, 1906, the administrator and the heirs at law of Byers, the defendants in the bill for an accounting, and the executrix and devisees and legatees of Kirk, came into court, and said executrix, devisees and legatees of Kirk were substituted as complainants in place of William T. Kirk, deceased, and the cause was dismissed. The reason for the dismissal was that the parties had effected a settlement. On July 13, 1906, being about a month after the dismissal of said suit, this claim was filed.

Waterman had done no work under his contract since the death of Kirk, and the defense was the Statute of Limitations as to claims filed against estates, and that defense prevailed in the Circuit Court. The question whether the claim was barred by the Statute of Limitations depends upon the contract between Kirk and Waterman. The proof shows that Kirk had substantially no property at the time Waterman was hired. The price agreed upon for Waterman's services was $5 per day, and the proof shows that the contract was that Kirk would pay Waterman from time to time what he could, or some small sums from time to time, the amount and the times of such payments not being specified, and that Kirk should be paid the balance out of the proceeds of the suit or when the suit was terminated. The witnesses who testified to the contract left it perhaps uncertain whether the balance was to be paid absolutely at the termination of the suit or whether it was to be paid out of the proceeds of the suit after the suit terminated. Kellum made a like ar-

rangement with Kirk as to his fees at the same time. It is clear that Kellum, Kirk and Waterman in making these arrangements, were confident that the suit would result in a decree in favor of Kirk for a balance due him upon the partnership account. If the contract was as above stated, then we think it clear that no cause of action arose in favor of Waterman, and his right to demand payment had not accrued, until the case was settled and the executrix, devisees and legatees of Kirk received the avails of a settlement, and the fact of such settlement became known to Waterman, or until the dismissal of that suit pursuant to such settlement. Where a contract provides that performance by the promisor shall take place upon the happening of a certain contingency or the fulfillment of a certain condition, the cause of action accrues and the statute begins to run when the event occurs and the condition is complied with, and not before. Where a contract provides that the promisor shall pay money to the promisee when the same shall be collected, the statute begins to run from the time of collecting. 25 Cyc., 1072, 1073. If an attorney undertakes to prosecute a suit for a contingent fee payable out of what may be realized from the claim, the statute begins to run against his right to compensation only when the money is collected. 25 Cyc., 1081. The right of action on a claim depending on a contingency or condition does not accrue till the happening of the contingency or the fulfillment of the condition, and the statute does not begin to run till then. The death of the party before the contingency happens does not set the statute in motion in favor of his estate. The inchoate cause of action continues to exist against his personal representatives as it did against him. 19 Am. & Eng. Encyc. of Law, 2d ed., 193, 194. We applied this rule of law in Quigley v. Harold, 22 Ill. App., 269. The proof that the contract was as above stated is undisputed, except by proof that, after the death of Kirk and long before the settlement of said chancery suit, Waterman told the executrix and others that there was due him from Kirk's estate over, $400, or $415, and that in the assignment of his claim to Townsend he stated there was

such sum due and owing to him from this estate. The word "due" is often used in the sense of "owing" without meaning thereby that the debt has matured and that a cause of action to sue for its recovery has accrued. There is nothing to show that when Waterman made these several statements the question when he was entitled to have payment made to him was the subject of discussion, and apparently that was not the matter being considered, and apparently Waterman meant that he had rendered services as an accountant for Kirk for a certain length of time at $5 per day and that after giving credit of certain small sums which the proof showed Kirk paid Waterman thereon, there was owing to him over $400 or $415. As the suit had progressed to a decision in favor of Kirk upon an accounting before the master, and the executrix and devisees and legatees of Kirk had taken no further steps in the cause for several years after Kirk's death, it was natural that he should thus bring the matter to their attention and endeavor to induce them to pay him, and such seems to have been the nature of the interviews in question. We do not think the language which the proof shows he used to the executrix and others warrants the conclusion that he thereby meant to say that payment had become due him so that he could have brought an action for his compensation before the termination of the suit. We are therefore of opinion that the defense of the Statute of Limitations was not maintained and that under the proofs there should have been a verdict for claimant, and a judgment that it be paid in due course of administration out of assets inventoried after the claim was filed in the County Court.

Claimant sought to prove how much the estate of Kirk received upon the settlement, and the court sustained an objection to that line of inquiry. We are of opinion that claimant had a right to show that the estate had received as much as or more than the amount of his claim, so that if the jury took the view of the contract that he was only to be paid out of the proceeds of the suit, it would appear that he was entitled to recover the full amount of his claim

because the proceeds of the settlement exceeded or equalled the amount due him at $5 per day. He had, however, no right to know or to prove how much the settlement exceeded that sum, as it was immaterial to his right of recovery whether the sum recovered or property received upon the settlement largely exceeded the amount of his claim or not.

The judgment is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*