Elizabeth Schweickhardt, Appellant, v. John C. Jokers, Administratrix of the Estate of Louise Jokers, Deceased, Appellee.

Gen. No. 8,171.

Opinion filed May 2, 1928.

P. A. GRISWOLD, for appellant;. CHAPMAN & DU HADWAY, of counsel.

P. M. HAMILTON and SUMNER & REARDON, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This controversy pertains to a claim which the appellant Elizabeth Schweickhardt filed against the estate of her deceased mother, Louise Jokers. Louise Jokers died April 12, 1925, and her son John C. Jokers, who had been conservator of her estate prior to her death, became administrator thereof. The claim which was filed against the estate in the county court of Jersey is as follows:

To services rendered, caring for my mother, the said Louise Jokers, in Godfrey, Illinois, giving her board, lodging and washing, caring for her room, waiting on her, combing

her hair, dressing and undressing her, bath-
ing her, helping her to move about, nursing
and carrying meals to her in bed when sick,
giving her constant care and attention from
March 1, 1908, to October 1, 1920, at $1.00 a
day .................................$4,500.00

To services rendered the said Louise Jokers
in St. Louis, Missouri, including board and
lodging, washing, care of room, nursing,
dressing a cancer, never leaving her alone,
waiting on her when unable to go to the toi-
let, giving her personal care and attention
from May 18, 1921, to April 12, 1925, three
years, ten months, twenty-four' days, at
$2.00 a day............................$2,838.00

$7,338.00
Less funds advanced and interest thereon...$2,998.50

$4,339.50

The appellant's claim was contested by the admin-
istrator and a counterclaim for the estate was filed.
There was a trial without a jury in the circuit court
of Jersey county, where the case had been taken on
appeal from the county court. At the close of the
evidence, the court rendered the following finding and
judgment:

"It is therefore considered by the Court that the
plaintiff, Elizabeth Schweickhardt, do have and re-
cover of and from the defendant; John C. Jokers, ad-
ministrator of the estate of Louise Jokers, deceased,
the sum of $1,460.00 for services in the care of Mrs.
Louise Jokers. It is further considered by this Court
that the defendant John C. Jokers, administrator of
the estate of Louise Jokers, deceased, do have and re-
cover of and from the plaintiff, Elizabeth Schweick-
hardt, the sum of $2,468.00, amount due from plaintiff

to defendant on three notes in evidence, leaving a balance due from plaintiff to defendant of $1,008.00, costs to be paid by the defendant in due course of administration.''

This appeal is prosecuted from the judgment.

The principal error assigned and urged for reversal of the judgment is that the court on motion of the appellee excluded the evidence offered by the claimant in reference to her services rendered in caring for her mother at Godfrey, on the ground that there was not sufficient proof of an agreement on the part of the deceased to pay for such services, and also because a claim for these services was barred by the statute of limitations.

Concerning the services rendered by the appellant for her mother while she was living with her at Godfrey, Hilda La Mothe, appellant's daughter, testified that the deceased came to live with her mother about March 1, 1908, and continued to live with her mother until October 1, 1920, when the family moved to St. Louis. She also testified as follows:

''When she lived with us at Godfrey and in St. Louis she had room, board and washing. Mother took care of her and mended and made her clothes. She was very helpless. She walked with a cane and could not bend over. Mother combed her hair, bathed her, washed her face, put on her shoes and stockings, took them off, dressed and undressed her and emptied the slop jar for her. At one time in Godfrey she fell and was injured by a truss she was wearing and was confined to her bed about two months. She had a nurse about two weeks, but after that mother took entire care of her; prepared her meals; took them to her bed. During that time she could not go to the toilet, but was obliged to use a bed pan and mother attended to that. During fall and winter of 1919 she was sick and was sometimes obliged to have a doctor. This made extra work for mother, and sister Alma had to

leave school in Alton and come home to help mother.''

A number of other witnesses corroborated Mrs. La Mothe in reference to the character of the services rendered by the appellant to her mother. In reference to the question of an understanding or agreement between the appellant and the deceased, Mrs. La Mothe testified as follows: ''While Mrs. Jokers lived with us in Godfrey, I heard her tell mother several times that when she died mother would be paid for taking care of her.'' Mrs. Minnie Svoboda, who was a witness for appellant in reference to the same matter, testified that she was in the Schweickhardt home sometimes two or three days out of a week helping the appellant with her housework, and that Mrs. Jokers talked about compensating her daughter: ''She said Lizzie would be well paid after she died for taking care of her. Heard Mrs. Jokers make a statement like that more than once while she was living in Godfrey. She mentioned it two or three times.'' Mrs. Elizabeth Hartman, who is a cousin of the appellant, testified that she called on the appellant while she lived at Godfrey once or twice a year and saw Mrs. Jokers, who was her aunt, there, and that she heard Mrs. Jokers make a statement concerning the matter of compensation to be paid to the appellant as follows: ''I heard her make statement as to compensation to Elizabeth for what she had done for her. She told me that the one that was best to her while she was living would get what was left of her money, and that was Mrs. Schweickhardt.'' Alma Canney also testified concerning the same matter: ''When living in Godfrey I have heard grandmother make statements as to whether mother would receive compensation for what she did for her. She didn't want my mother to feel so worried. She said at her death she would be well paid for anything she ever done for her.''

The inference to be drawn from this testimony is clearly to the effect that the appellant and the de-

ceased had an express understanding and agreement that the appellant was to be paid at the time of Mrs. Jokers' death for the services she rendered in caring for her. It may also be pointed out in this connection that the compensation which the appellant was to receive was not payable until after the death of her mother, and, therefore, that her cause of action would not accrue to appellant until the happening of that event, and hence the statute of limitations did not begin to run until the mother's death. "A cause of action must have existence before it can be barred." *Davis v. Munie,* 235 Ill. 620. A promise to pay a debt at the death of the promisor is a valid and legally binding obligation. *Neish v. Gannon,* 198 Ill. 219.

In *Waterman v. Estate of Kirk,* 139 Ill. App. 451, the court said: "Where a contract provides that performance by the promisor shall take place upon the happening of a certain contingency or the fulfillment of a certain condition, the cause of action accrues and the statute begins to run when the event occurs and the condition is complied with, and not before." And it was distinctly held in *Estate of Switzer v. Gertenbach,* 122 Ill. App. 26, that where the proof shows an agreement between a claimant and a deceased for services to be paid at death and out of his estate, the claim does not mature until the death of the deceased, and the statute of limitations does not run against the claim for that reason.

It is clear from the authorities above cited that appellant's claim for services rendered at Godfrey was not barred by the statute of limitations.

For the reasons stated, we therefore conclude that the court erred in excluding the evidence concerning the services of the appellant rendered for her mother during the time the deceased lived with her at Godfrey. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*