The Garrett Biblical Institute, Appellee, v. National
Fire Insurance Company of Hartford, Appellant.

Gen. No. 33,834.

Opin-
ion filed April 22, 1930. Rehearing denied May 5, 1930.

HICKS & FOLONIE, for appellant.

ARVID B. TANNER, for appellee; BUTLER, LAMB, FOS-
TER & POPE, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

The Garrett Biblical Institute, a corporation, sued the National Fire Insurance Company of Hartford, a corporation, in an action in contract. The case was tried before the court, with a jury, and at the conclusion of all the evidence the court directed the jury to find the issues for plaintiff and to assess its damages at $460.87. This appeal followed judgment on the verdict.

Plaintiff owned a building and defendant, a fire insurance corporation, through its agents in Chicago, Moore, Case, Lyman & Hubbard, issued, on June 21, 1916, a three-year policy on the property, and plaintiff paid the premium, amounting to $326.70. Between the time of the issuance of the policy and October 5, 1916, plaintiff equipped the building with a sprinkler system, which reduced the rate of insurance premium. On October 5, 1916, the said agents indorsed on the face of the policy the following:

"Chicago Oct. 5–1916
Rate reduced to .377/.9425 from Date
For improvements
Return Premium       $284.29
Moore, Case, Lyman & Hubbard."
Plaintiff sued to recover this return premium.

Defendant contends that "plaintiff's claim is barred by the five year Statute of Limitations, which was pleaded." In support of this contention defendant argues that the present action is based upon an oral contract and that it is barred by Section 15 of the Statute of Limitations, commonly called the five year statute. The said indorsement was only one of several amendments inserted in the policy, each of which created new rights and liabilities, and each of which became an integral part of the policy of insurance. In *The Garrett Biblical Institute v. Franklin Fire Insurance Co.,* 246 Ill. App. 623, the same contention as the instant one, under a like state of facts, was urged, and it was there held that the indorsement "became and was a part of said policy; and that the parties had a right to make changes or alter conditions in said instrument, so as to make it an integral part of said policy, by either endorsing it upon the face thereof or by changing the policy itself. The policy contains a provision providing for this very thing, namely, that it was made and accepted subject to stipulations and conditions made therein, together with such other provisions and conditions as might be endorsed thereon or added thereto. . . . We consider that the endorsement on the policy became part of the same, and was sufficient to import a promise to pay, as a rebate to the plaintiff below, the sum of $210.58, on October 19, 1916,—the date on the face of the endorsement and, therefore, not subject to the defense of the Statute of Limitations." *Certiorari* was denied in that case. In its reply brief the defendant argues that the present

suit was not brought upon the policy and that the present claim is merely one for a refund or return of premium. While the policy is not set out in the amended statement of claim *verbatim*, the statement does allege the issuance of the policy, the amount of insurance, the property covered, the rate, the premium paid, the effective dates, the reductions in the rate, the refund agreement, the name of the issuing company and its agent, the installation of the sprinkler system, the reduction of the rate thereby and the indorsement of the refund provision on the face of the policy. Defendant made no demand that the policy be set out or attached to the amended statement of claim. Defendant argues that "plaintiff's action is not brought on the policy of insurance, but is brought specifically for recovery of a supposed account stated, which supposed stated account was denied by the defendant." The basis for this contention is the following allegation in the amended statement of claim: "That after the completion of said sprinkler system a balance was struck and an account was stated between the plaintiff and the defendant whereby the defendant was found to be indebted to the plaintiff on October 5, 1916, in the sum of $294.29, which the defendant promised to pay, *and said insurance policy was then endorsed by the defendant as above described.*" In the light of the entire amended statement of claim this amounts to no more than an allegation that after the sprinkler system was put in the parties came to an agreement as to the amount of refund premium due plaintiff under the policy and that then defendant made the indorsement in question upon the policy. We think that when the entire amended statement of claim is interpreted in a reasonable way it must be held that plaintiff's action is brought on the policy of insurance as amended by the refund indorsement. The present contention of defendant cannot be sustained.

Defendant next contends that "the evidence shows that Douglas Bros. & Rice were agents of the plaintiff in the transaction, and payment to them was payment to plaintiff." To this contention plaintiff responds that "assuming that Douglas Bros. & Rice were plaintiff's agents for the purpose of securing the refund endorsement and collecting the refund it could not accept payment in anything but money and the balancing of debits and credits on the books of the clearing house was not payment to plaintiff." It is a reasonable assumption from the evidence that Douglas Bros. & Rice were plaintiff's agents for the purpose of collecting the refund from defendant. There existed at the time in Chicago an organization known as "Chicago Board of Underwriters' Clearing House." Its membership consisted of insurance brokers and agents. Douglas Bros. & Rice and Moore, Case, Lyman & Hubbard were members of it. The organization was maintained for the convenience of its members and it was used by them as a medium for handling business among themselves. If a broker was indebted to another broker on any transaction, either for his own account or for the account of a policy holder, the creditor broker prepared a statement in triplicate showing the item of indebtedness. He retained one copy and submitted two to the debtor broker, who retained one copy and O.K.'d the other and returned it to the creditor broker, who then forwarded it to Clearing House, where each broker had an open account. Upon receipt of the O.K.'d statement Clearing House made an entry on the debtor broker's account showing the amount he was required to pay and another entry on the account of the creditor broker showing the amount he was entitled to receive. The brokers were then no longer debtors or creditors of one another, but were debtors or creditors of Clearing House. On the tenth of each month Clearing House balanced the accounts of the broker mem-

bers and sent statements to them. Those whose accounts showed a debit balance were required to send a check, payable to Clearing House, for the amount due, and those whose accounts showed a credit balance were given a check of Clearing House for the amount to their credit. The alleged payment in the present case was handled by Moore, Case, Lyman & Hubbard and Douglas Bros. & Rice, through Clearing House, in the manner we have heretofore outlined. No check or money was sent by Moore, Case, Lyman & Hubbard to Douglas Bros. & Rice or to plaintiff, or to Clearing House. The evidence offered by plaintiff tended to show that plaintiff never authorized the payment of the refund through Clearing House and that it had no knowledge of the existence of that organization or of the methods employed by brokers and agents in clearing transactions among themselves. Defendant alleged in its affidavit of merits that any money which was due and owing from defendant to plaintiff for or on account of the rebate had been paid to plaintiff by defendant. Payment is a matter of defense and the burden was upon defendant to prove it and in the absence of evidence it will be presumed that it has not been made. We find no evidence in the record tending to show that plaintiff authorized the payment of the refund through Clearing House. Defendant cites no authorities in support of the instant contention. The following cases sustain the position of plaintiff in reference to the instant contention of defendant: *Scott v. Irving,* 1 Barn. & Ad. 605; *Sweeting v. Pearce,* 99 Eng. C. L. Rep. 534; *Bartlett v. Pentland,* 10 Barn. & Cres. 760; *Everts v. Lawther,* 165 Ill. 487; *Scott v. Gilkey,* 153 Ill. 168; *Bank of Antigo v. Union Trust Co.,* 149 Ill. 343; *Federal Reserve Bank v. Malloy,* 44 Supr. Ct. Rep. 296. Defendant argues that it had the right to pay Douglas Bros. & Rice or a messenger from that firm and that Clearing House "was in effect a mes-

senger from Douglas Bros. & Rice," and further argues that Douglas Bros. & Rice were plaintiff's agents to secure the indorsement on the policy and the refund of the premium and that as plaintiff ratified the action of its agent in securing the indorsement on the policy "it cannot disavow the act of its agent in designating the Clearing House as the medium or messenger for the delivery of the payment," and that plaintiff has thereby ratified the act of its agent "in designating the Clearing House as the medium or messenger for the delivery of the payment." We find no merit in either theory. Defendant cites no cases in support of them and the cases we have cited are adverse to them.

Defendant next contends that "plaintiff's waiting nine years to assert its supposed rights was laches, operating as estoppel against the assertion of the claim." We find no merit in this contention. "The Statute of Limitations is a purely legal as contra distinguished from an equitable defense." (*Evans v. Moore,* 247 Ill. 60, 72.) The object of statutes of limitations "is to suppress fraudulent and stale claims from springing up at great distances of time and surprising the parties or their representatives when all the proper vouchers and evidences are lost or the facts have become obscure from the lapse of time or the defective memory or death, or removal of witnesses." (37 C. J. 684. See also *Miller v. Calumet Lumber & Mfg. Co.,* 121 Ill. App. 56, 66.) The statute fixes the time within which an action at law may be brought and the present proceeding was commenced within the statutory period. Laches is in the nature of an equitable estoppel. Defendant claims that through the delay of plaintiff it suffered the loss of evidence, but the record fails to sustain this contention. There is no showing that any witness material to the defense could not be produced. The chief accountant of Moore, Case, Lyman

& Hubbard testified that he remembered the transaction and detailed it at length; Rice, a member of the firm of Douglas Bros. & Rice, who handled the account of plaintiff for that firm, testified in detail as to the transactions in question; the manager of Clearing House and defendant's controller were present and testified. No showing was made that any witness not procurable could have thrown any additional light on the issues. Douglas Bros. & Rice became insolvent in 1917 and their records appear to have been destroyed about that time. The books and records of Moore, Case, Lyman & Hubbard were destroyed in 1921. The records of Clearing House were destroyed about 1922. Had plaintiff started its suit five years before it did, defendant would then have been unable to introduce the records of these firms. Defendant did not attempt to prove that any of the destroyed records contained any evidence material to its defense which it was not otherwise able to introduce. The evidence clearly shows how the transactions between the several parties took place, including the manner in which the alleged payment was made.

Defendant contends that the court admitted incompetent evidence over its objection. We find no substantial merit in this contention.

Defendant contends that the court erred in overruling its motion for a directed verdict in its favor. We find no merit in this contention.

Defendant contends that "the Court erred in granting plaintiff's motion for direction of verdict in its favor at the close of all the evidence." We find no merit in this contention.

After a careful consideration of the various contentions raised by defendant, we are satisfied that the judgment of the Municipal Court of Chicago should be affirmed and it is accordingly so ordered.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.