HUGH M. MATCHETT, Plaintiff-Appellant, *v.* LEONARD ROSE *et al.,* Defendants-Appellees.

First District (5th Division) No. 60724

Opinion filed February 13, 1976.—Rehearing denied April 12, 1976.

Hugh M. Matchett, of Chicago, appellant, *pro se.*

Leonard Rose, of Falmouth, Massachusetts, appellee, *pro se.*

Sidney C. Kleinman, Ltd., of Chicago (Sidney C. Kleinman, Jack Reiss, and Richard M. Kates, of counsel), for appellees William H. Hiyane and Acro Contact Lens Service, Inc.

Mr. JUSTICE BARRETT delivered the opinion of the court:

Plaintiff brings this appeal following the dismissal in the trial court of his first amended complaint with prejudice.

The following is a summary of the allegations in plaintiff's complaint.

On September 15, 1965, attorney Leonard Rose, representing defendants Hiyane and Acro Contact Lens Service, Inc., (hereafter ACRO), in the pending case of *House of Vision, Inc. v. Hiyane,* entered into a verbal professional service agreement with plaintiff, an attorney, to assist him as co-counsel in the concluding trial litigation and, if necessary, in preparing an appeal to the Illinois Supreme Court. The agreement provided for Matchett to receive a noncontingent fee of $1,500, to be deposited by Rose in a special account to be paid after the reply briefs were filed, or on expiration of the time in which they could be filed, and in the event the decree was reversed, additional reasonable fees. Rose obtained $1,500 from their clients and placed the money in his special attorney's checking account and held it to guarantee payment of plaintiff's noncontingent fee. No other fee was to be paid until the appeal was concluded. Pursuant to the agreement, plaintiff began research on matters still pending before the trial court and on potential issues to be raised on appeal if an adverse trial court decree was entered. On October 25, 1965, The House of Vision, plaintiff in the original lawsuit, obtained an injunction and a judgment of $1,698.82 against defendants Hiyane and Acro. Plaintiff then proceeded to perform all the conditions precedent to full performance of the agreement to the extent he was not excused or prevented by actions of defendants.

On May 25, 1966, after numerous disagreements had occurred between attorneys Matchett and Rose concerning both the substance of Matchett's work product and the numerous extensions of time which appellants were required to seek, Matchett received a letter from Rose advising him that he was relieved of any further duty in the case. On June 4, 1966, Rose filed an appellants' brief in the Supreme Court of Illinois, using parts of plaintiff's work product. On July 26, 1966, Rose asked Matchett if he wished to return to the case and prepare the reply brief. Matchett agreed and prepared and delivered a reply brief to Rose, partly typed and partly dictated on discs, which Rose rejected and returned to Matchett. On August 31, 1966, Rose filed his reply brief and argued the case before the Supreme Court on September 16, 1966.

On March 29, 1967, the Supreme Court reversed the decree and issued its mandate remanding the case with instructions to dismiss the complaint for want of equity and to assess fees of the master and other costs against The House of Vision, Inc.

Up to this point Rose had paid Matchett $500 out of the $1,500 guaranteed fee and plaintiff asserts that the remaining balance of $1,000, plus his reasonable contingent fee then became due, subject only to determination of the appropriate amount which plaintiff claims to be $25,500. Rose offered to send Matchett a check for $1,000 for his fees which was not accepted.

On April 17, 1967, plaintiff served notice of an attorney's lien on The House of Vision, Inc., Hiyane, Acro Contact Lens Services, Inc., Rose, and Alexander & Company, claiming a "common law retaining lien on all Hiyane's and Acro's money and papers that were in Rose's possession," "an equitable lien by contract or in equity and good conscience on all Hiyane's and Acro's money that was in Rose's possession  *  *  * except the money paid to plaintiff" and a "statutory charging lien" on monies paid to Rose.

On May 3, 1967, defendants Hiyane and Acro, represented by Rose, filed a motion supported by affidavit in the circuit court in the case of *House of Vision, Inc. v. Hiyane* for an adjudication of any attorney's lien that Matchett may possess or any attorney's fees that he may be entitled to other than those already paid. On May 10, 1967, plaintiff filed an answer to Acro and Hiyane's motion filed May 3, 1967, entitled "REPLY TO DEFENDANT'S MOTION FILED MAY 3, 1967, IN REGARD TO HUGH M. MATCHETT'S NOTICE OF ATTORNEY'S LIEN DATED APRIL 17, 1967," in which he requested the trial court to rule that he was entitled to an attorney's lien and reasonable fees based upon his work related to the case. On May 26, 1967, the trial court entered an order finding that Matchett was entitled to a total fee

of $2,500 for services in preparing an appeal to the Illinois Supreme Court, that amount to include the $1,000 set aside in the special attorney's account as well as the $500 previously paid to Matchett. It appears from the record that the court relied upon the pleadings and argument of counsel, rather than on an evidentiary hearing, in determining the amount. On June 24, 1967, Matchett filed a motion to vacate the May 26 order, alleging numerous errors including the inadequacy of the amount, violation of Supreme Court Rule 271 (Ill. Rev. Stat. 1967, ch. 110A, par. 271), in that the losing party rather than the prevailing party prepared and presented the order to the court, and that the order failed to recite specific findings of fact necessary to the conclusion it reached. On November 22, 1967, pursuant to Matchett's motion, the trial court vacated the order of May 26, 1967, which had awarded him $2,500 for services performed.

On February 2, 1968, the case of *House of Vision v. Hiyane* was dismissed in the circuit court pursuant to the mandate of the Illinois Supreme Court.

On June 26, 1968, Matchett, under the same case number assigned to *House of Vision v. Hiyane*, filed a "PETITION FOR DISCOVERY OF FACTS AND FOR INSPECTION AND PRESERVATION OF DOCUMENTS UNDER THE RULES OF THE SUPREME COURT OF ILLINOIS." The petition contained no factual allegations constituting a cause of action.

On July 26, 1968, the trial judge entered an order denying Matchett's petition for discovery and inspection of documents for the following reasons:

"1. The Court has no jurisdiction over the matter by reason of the mandate of the Illinois Supreme Court;

2. Under the Illinois Statute governing attorney's liens, said Hugh M. Matchett has no attorney's lien which is enforceable by the Court in this case.

The Court further finds that there is no just cause for delaying any appeal from this Order, which is final and appealable, upon the facts and issue presented."

On August 29, 1968, Matchett filed a motion to vacate the order denying his request for discovery entered July 26, 1968. On October 1, 1968, the trial court denied the motion to vacate the order of July 26, 1968, and concluded:

"* * * It is ordered that HUGH M. MATCHETT shall take nothing by this suit, without prejudice to or determination of his right to fees or the amount thereof or his right to or extent of an

attorney's lien against the plaintiff or defendants in a separate action brought by him for such determination, and without prejudice to any ancillary relief he may seek in such litigation, this Court making no finding or adjudication on the merits of his claims for fees and lien, and the plaintiff and defendants and LEONARD ROSE may go hence without day, without award of costs."

On October 26, 1968, Matchett filed a notice of appeal naming Rose as a respondent-appellee against whom relief was prayed on appeal, having designated Rose a respondent in his motion of June 26, 1968. Rose filed a motion to dismiss the appeal of Matchett as to Rose personally on the ground that Rose never was a party to the litigation and was never made a party by leave of court. On November 27, 1968, the trial court granted the motion of Rose dismissing the appeal as to him on the ground he was not a party to the action. On March 5, 1969, the appellate court, upon motion of the appellees, dismissed Rose as a party to the appeal.

On December 16, 1969, the appellate court granted appellee's motion to dismiss the appeal, and on March 20, 1970, Matchett's petition for leave to appeal to the Illinois Supreme Court was denied.

Plaintiff concludes his first amended complaint by stating that the aforementioned circumstances have resulted in Rose obtaining and exerting unauthorized control over his work product in the case of *House of Vision, Inc. v. Hiyane.* Furthermore, that Rose, as agent for the defendants Acro and Hiyane, has breached a fiduciary duty to plaintiff as a fellow attorney and joint adventurer or partner to assist plaintiff in enforcing his attorney's lien by distributing the client's money held by Rose subject to plaintiff's attorney's lien or converted it to his own use to pay his own fees and expenses, with intent to defraud plaintiff of his fees and attorney's lien. Plaintiff alleges that defendants Acro and Hiyane, in violation of their fiduciary duty to plaintiff to assist in enforcing his attorney's lien, and to pay him his fees, either accepted money or permitted Rose to convert it to his own use to pay Rose's fees and expenses.

Plaintiff alleges that he has no adequate remedy at law, and that the chancery court should take jurisdiction of this matter to avoid a multiplicity of actions and to assist in enforcement of his attorney's lien, and to determine the amount of his attorney's fees.

Plaintiff's first amended complaint also demands that defendants comply with requests for discovery by permitting inspection of documents, and answering a list of attached interrogatories in writing under oath.

Plaintiff's complaint concludes with a prayer for relief in which he asks the court to provide the following assistance: (1) enter a judgment that the allegations in the amended complaint are true; (2) require the defendants to make discovery; (3) require the defendants to account to plaintiff for all funds in Rose's possession that were subject to his attorney's liens; (4) require the defendants to make restitution of said funds by depositing them with the clerk of the court; (5) enter a judgment for plaintiff against defendants Hiyane and Acro in the sum of $25,000 for his fees; (6) enter a judgment against defendant Rose for $11,472.30, with interest against Rose from April 21, 1967; (7) require defendant Rose to return plaintiff's property to him or to file same with court; (8) require defendants to answer interrogatories propounded; (9) afford plaintiff all relief he is entitled to receive against defendants under sections 41 and 57(5) of the Civil Practice Act and under section 157.150 of the Illinois Business Corporation Act and under the common law; and (10) require all defendants to show cause why they should not be held in contempt of court, civil and criminal.

On December 26, 1973, Rose moved for an involuntary dismissal of plaintiff's first amended complaint pursuant to section 48 of the Civil Practice Act. On January 17, 1974, Acro and Hiyane moved to strike plaintiff's first amended complaint.

On January 21, 1974, the trial court, after arguments of counsel, dismissed with prejudice plaintiff's first amended complaint for the following reasons:

"1a. Plaintiff's First Amended Complaint fails to state a cause of action for which equitable relief can be granted;

b. Plaintiff's First Amended Complaint is barred by the Statute of Limitations of Illinois;

c. Plaintiff's First Amended Complaint is barred on the grounds of *res judicata*;

d. Plaintiff has been guilty of *laches* and, therefore, plaintiff's First Amended Complaint is barred by *laches*;

e. Plaintiff's First Amended Complaint is hereby dismissed with prejudice for want of equity;

f. Plaintiff's First Amended Complaint violates the provisions of the Civil Practice Act and the Rules of the Supreme Court of Illinois.

2. There is no just reason for delay of enforcement or appeal of this Order."

Plaintiff's motion to vacate the dismissal on February 15, 1974, was denied on May 14, 1974. Plaintiff filed a notice of appeal on June 10, 1974.

OPINION

■■ In reviewing the propriety of a trial court granting defendant's motions to strike and dismiss plaintiff's complaint with prejudice, we begin by noting two well established principles of law: (1) a motion to strike or dismiss admits, for the purpose of ruling thereon, all facts well pleaded in the complaint (*Logan v. Presbyterian-St. Luke's Hospital*, 92 Ill. App. 2d 68, 235 N.E.2d 851; *Grabavoy v. Wilson*, 87 Ill. App. 2d 193, 230 N.E.2d 581; *McGill v. 830 S. Michigan Hotel*, 68 Ill. App. 2d 351, 216 N.E.2d 273), and (2) if any ground relied upon by the trial court in granting the motion to dismiss was proper, an appellate court would be required to affirm the judgment. *People ex rel. Kunstman v. Nagano*, 389 Ill. 231, 59 N.E.2d 96.

The first reason relied upon by the trial court in granting defendant's motions to strike and dismiss the first amended complaint with prejudice was plaintiff's failure to state a cause of action for which equitable relief could be granted.[1] In substance, plaintiff's amended complaint seeks a declaration and enforcement of any attorney liens which he may possess and the recovery of money allegedly owed to him as attorney's fees under an oral professional services contract. The complaint requested recovery of the $1,000 remaining to be paid from a guaranteed $1,500 special attorney's fees account and additional reasonable fees based upon the reversal of the original case by the Illinois Supreme Court. Any other relief requested by plaintiff is sought for purposes of substantiating the above mentioned claims, protecting his rights to various properties, or is collateral to the substantive claims and pertinent only to allegations of misconduct on the part of defendants.

■■ A motion to dismiss or strike a complaint for want of equity presents the issue of whether plaintiff has pleaded facts which furnish a basis upon which a chancery court may grant relief. (*Tuttle v. Bell*, 377 Ill. 510, 37 N.E.2d 180.) The practice of striking or dismissing a complaint should be confined to cases where there is a want of equity on the face of the complaint and it is clear that no amendment will aid it. A complaint should not be dismissed where, when liberally construed, it is sufficient to state a cause of action for which equitable relief may be provided. *Darst v. Lang*, 367 Ill. 119, 10 N.E.2d 659; *Barzowski v. Highland Park State Bank*, 371 Ill. 412, 21 N.E.2d 294.

■■ Based upon the above legal propositions, we believe plaintiff's first amended complaint does state a cause of action for which a court of chancery could provide equitable relief. While this court has con-

---

[1] The fifth reason stated in the trial court order justifying dismissal of the complaint was a "want of equity." This court does not perceive any legal distinction between these two phrases, and therefore will analyze them together.

siderable doubt that plaintiff possesses either a statutory lien, since no property was received by plaintiff's clients in which that lien could attach, or a common law retaining lien, since plaintiff would need to be in physical possession of such property for that lien to attach, the question of whether he possesses an equitable lien over certain property, enforceable in a chancery court, is clearly arguable. In *Aldrich v. R. J. Ederer Co.*, 302 Ill. 391, 395, 134 N.E. 726, our Supreme Court discussed equitable liens and made the following observations:

> "It has been held that whenever parties enter into an express executory agreement in writing indicating an intention to make some particular property, real or personal, or a fund, security for a debt or other obligation, there is created an equitable lien on the property described in such contract which is enforceable in the hands of the original contractor, and also his heirs, administrators, executors, voluntary assignees, purchasers, and incumbrancers with notice. (*Walker v. Brown*, 165 U.S. 654; 10 R. C. L. sec. 100.) An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. It is not a *jus in re* or a *jus ad rem*; neither a debt nor a right of property, but a remedy for a debt. (*Webster v. Nichols*, 104 Ill. 160.) 'It is simply a right of a special nature over the thing which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree, and its proceeds in one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists.' (3 Pomeroy's Eq. Jur.—4th Ed.—sec. 1233.) The application of the doctrine of equitable lien has been recognized in this State. *Webster v. Nichols, supra.*"

Thus it is arguable that, at a minimum, the $1,000 balance of the original $1,500 placed in a special attorney's account for plaintiff was subject to an equitable lien enforceable in a court of equity, and therefore the trial court erred in dismissing the amended complaint for want of equity or for failure to state a cause of action for which equitable relief could be granted.

■■ Furthermore, we believe the trial court erred in resorting to the extreme remedy of dismissing the complaint with prejudice for want of equity even if it determined that plaintiff possessed no enforceable liens in chancery and the foundation of the cause of action rested solely on the verbal contract, in which case a remedy at law would be adequate. In *Rao Electrical Equipment Co. v. Macdonald Engineering Co.*, 124 Ill. App. 2d 158, 172, 260 N.E.2d 294, this court, in reviewing the pro-

priety of the trial court granting plaintiff an injunction where it appeared its remedy at law was entirely adequate, stated:

"We hold that the remedy of injunction was improper in this case as the parties had an adequate remedy at law for breach of contract. It is apparent from the pleadings and from the evidence that although Rao filed its complaint in the Chancery Division of the Circuit Court of Cook County, the crux of its case involved breach of contract. Each side, in its pleadings and evidence, charged the other with such breach. * * *

*It was the duty of the trial judge to remit these parties to the Law Division where either side could demand trial by jury.*" (Emphasis added.)

(See also *Jamal v. Jamal*, 98 Ill. App. 2d 180, 240 N.E.2d 246, wherein the court construed section 10(2) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 10), as requiring transfer of a cause to a proper division upon a misfiling rather than dismissal of the complaint.) We thus conclude that even if the trial court had properly determined that no ground existed to invoke its equitable jurisdiction, it was nevertheless obligated to transfer the cause to the Law Division rather than dismissing the action with prejudice for want of equity.

The second ground that the trial court relied upon in dismissing the amended complaint was that the complaint was barred by the statute of limitations.

It is well established that the statute of limitations is a purely legal rather than an equitable defense. (*Garrett Biblical Institute v. National Fire Insurance Co.*, 257 Ill. App. 117; *Evans v. Moore*, 247 Ill. 60, 93 N.E. 118.) Therefore, the question of whether plaintiff's amended complaint is barred by the statute of limitations arises only after a determination that the alleged cause of action is one at law rather than in equity. As previously noted, this court is of the opinion that plaintiff has alleged facts sufficient to constitute a cause of action for which equitable relief may be provided and therefore the statute of limitations is inapplicable. Furthermore, assuming *arguendo* that plaintiff's amended complaint is based solely on contract for which a remedy at law would be adequate, we nevertheless conclude that such action at law would not be barred by the statute of limitations.

■■■ Under section 15 of the Limitations Act the time period provided for enforcement of an oral contract is five years after the date on which the cause of action accrued. (Ill. Rev. Stat. 1973, ch. 83, par. 16.) A cause of action for enforcement of an attorney's professional services contract to conduct certain litigation accrues from the time the services contracted for have been performed by the ending of the action or by

termination of the retainer in some other mode. (*Walker v. Goodrich*, 16 Ill. 341.) Where a claim or right of action is dependent upon a contingency or event, the period of limitations does not commence to run until the happening of the contingency or event. (*Schweickhardt v. Jokers*, 250 Ill. App. 77; *Waterman v. Kirk*, 139 Ill. App. 451.) Where an amended complaint has been filed which does not state a new matter or claim, but merely restates in different form the cause of action pleaded in the original complaint, the statute of limitations is arrested at the time of the filing of the original complaint. (*Chicago & Alton R.R. Co. v. Henneberry*, 153 Ill. 354, 38 N.E. 1043.) Where a cause of action is stated for the first time in the amended complaint, the suit is said to have commenced as to such cause of action at the time of filing the amended cause of action, and if the statute of limitations has then run, it will be a bar to the cause of action alleged in the first instance in the amended complaint. *Allis-Chalmers Manufacturing Co. v. Chicago*, 297 Ill. 444, 130 N.E. 736.

■■ Defendant Rose filed a reply brief in *House of Vision v. Hiyane*, before the Illinois Supreme Court, on August 31, 1966, and oral arguments occurred on September 16, 1966. That appeal was concluded by the reversal of the case and the issuance of the Supreme Court mandate on March 29, 1967. Plaintiff filed his original complaint in the instant case on May 24, 1971, and his amended complaint on December 14, 1973. We conclude that plaintiff's amended complaint merely restated in different form, with minimal changes, the same causes of action previously alleged in the original complaint and therefore the statute of limitations was arrested by the filing of the original complaint on May 24, 1971. Taking either the filing of the reply brief, the oral arguments before the Supreme Court, or the reversal of the original case by that court as the date upon which plaintiff's services were concluded or as the date upon which a breach became apparent, to the date of his filing the original complaint, we find that less than five years has elapsed. We therefore conclude that even if plaintiff's amended complaint was determined to state only a cause of action at law, therefore making the statute of limitations a proper defense, the permissible limitations period for bringing the action has not run.

■■ The next reason relied upon for dismissing the amended complaint is that it was barred by application of the *res judicata* doctrine. The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. *People v. Kidd*, 398 Ill. 405, 75 N.E.2d 851.

Defendants contend that the doctrine should be invoked in the instant case to bar the action since plaintiff litigated his rights to attorney's liens and fees in the case of *House of Vision v. Hiyane* on two separate occasions. Defendants refer specifically to the May 26, 1967, trial court order in that original case, where, after arguments of counsel, the court entered an order awarding plaintiff $2,500 as the value of his legal services as the first determination of the attorney's fees question, and to plaintiff's subsequent "PETITION FOR DISCOVERY OF FACTS AND FOR INSPECTION AND PRESERVATION OF DOCUMENTS UNDER THE RULES OF THE SUPREME COURT," filed in the same case and denied on July 26, 1968, as the second determination of the attorney's fees question. Each event must be discussed separately.

The record reflects that the order of May 26, 1967, awarding plaintiff $2,500 for legal services, was vacated upon plaintiff's motion filed June 24, 1967, and decided on November 22, 1967. Thus, on November 22, 1967, the parties stood as though the question had never been presented or decided. A judgment or order vacated or set aside by the court which rendered it is deprived of its conclusive character, and no longer stands as a bar to subsequent action on the same cause of action. (23 Ill. L.&Pr. *Judgments* §311 (1956); *Muller v. Neumeister*, 203 Ill. App. 398; *People ex rel. Williams v. Board of Education*, 350 Ill. 597, 183 N.E. 633.) Thus the doctrine of *res judicata* cannot be invoked by defendants to bar plaintiff's cause of action in the instant proceeding based upon the May 26, 1967, order which was subsequently vacated in the previous action.

Defendants also suggest that the order entered in *House of Vision v. Hiyane* denying plaintiff's petition for "DISCOVERY OF FACTS AND FOR INSPECTION AND PRESERVATION OF DOCUMENTS UNDER THE RULES OF THE SUPREME COURT," filed on June 26, 1968, must similarly be given *res judicata* effect in the instant action. The order entered upon that petition denied the relief requested by plaintiff for two reasons:

> "1. The Court has no jurisdiction over the matter by reason of the mandate of the Illinois Supreme Court.
>
> 2. Under the Illinois statute governing attorney's liens, said Hugh M. Matchett has no attorney's lien which is enforceable by the court in this case.
>
> The Court further finds that there is no just cause for delaying any appeal from the Order, which is final and appealable upon the facts and issue presented."

On August 29, 1968, plaintiff filed a motion to vacate the order denying his request for discovery and inspection of documents. The trial court denied the motion to vacate, and concluded in that order:

650

"* * * It is ordered that HUGH M. MATCHETT shall take nothing by this suit, without prejudice to or determination of his right to fees or the amount thereof or his right to or extent of an attorney's lien against the plaintiff or defendants in a separate action brought by him for such determination, and without prejudice to any ancillary relief he may seek in such litigation, this Court making no finding or adjudication on the merits of his claims for fees and lien, and the plaintiff and defendants and Leonard Rose may go hence without day, without award of costs."

■■ It is fundamental to the invocation of the *res judicata* doctrine in a subsequent proceeding that the question be presented and adjudicated on the merits by a court of competent jurisdiction in the first proceeding between the parties. (*People v. Kidd*, 398 Ill. 405, 75 N.E.2d 851.) A review of plaintiff's petition for discovery and inspection of documents, the trial court's order denying that relief, and the denial of the motion to vacate that order indicate numerous requisite elements missing before this court could bar plaintiff's complaint under the *res judicata* doctrine. Plaintiff's petition did not include any additional allegations constituting a cause of action. Thus the question of plaintiff's rights to an attorney's lien or fees was not placed before the court for adjudication. The trial court, recognizing its obligation to comply with the mandate of the Supreme Court which ordered dismissal of the cause, properly determined it had no jurisdiction over the matter and that therefore plaintiff had no attorney's lien or fees which could be enforced in that case. The trial court explicitly recognized these propositions in both its initial order denying plaintiff's petition, and in its denial of plaintiff's motion to vacate that order, when it stated that plaintiff "shall take nothing by this suit, without prejudice to or determination of his request to fees or the amount thereof or his right to or extent of an attorney's lien * * * this Court making no finding or adjudication on the merits of his claims for fees and lien, * * *." It is therefore clear that, for the above mentioned reasons, the order denying plaintiff's request for discovery and inspection of documents may not be raised as a former adjudication in the instant proceedings to bar plaintiff's complaint for a determination of any rights to attorney's liens or fees.

The next reason relied upon by the trial court for justifying the dismissal of plaintiff's amended complaint was that plaintiff was guilty of *laches* and therefore his complaint was barred by *laches*.

■■ *Laches* has been defined as a neglect or omission on the part of a complainant to assert a right, taken in conjunction with a lapse of time, and other circumstances causing prejudice to an adverse party,

which will operate as a bar to pursue the claim in a court of chancery. (*Freymark v. Handke*, 415 Ill. 360, 114 N.E.2d 349.) *Laches*, unlike the statute of limitations barring pursuit of a legal cause of action, is not merely the passage of a given time period, but is a question of the inequity of permitting a claim to be enforced where the complainant has not been vigilant in enforcing his rights resulting in detriment to an adverse party. (*Pyle v. Ferrell*, 12 Ill. 2d 547, 147 N.E.2d 341; *Curtis v. Curtis*, 398 Ill. 442, 75 N.E.2d 881; *Carlson v. Carlson*, 409 Ill. 167, 98 N.E.2d 779.) The doctrine of *laches* was created to promote justice, and not to protect injury, and will not be applied where it will be inequitable and unjust. (*Carlson v. Carlson*, 409 Ill. 167, 98 N.E.2d 779.) There is no absolute rule as to what constitutes *laches*, and whether the doctrine should be invoked is determined by the facts and circumstances of the particular case. *Pyle v. Ferrell*, 12 Ill. 2d 547, 147 N.E.2d 341.

Plaintiff filed his initial complaint in chancery in the instant action on May 24, 1971. As previously noted under our discussion of the statute of limitations, the earliest time in which plaintiff could have known of a possible breach of the attorney's agreement would have been at the conclusion of *House of Vision v. Hiyane* case before the Illinois Supreme Court on March 29, 1967, and when defendant Rose offered plaintiff $1,000 as his fees under the contract. From May 3, 1967, the date on which defendants Hiyane and Acro filed a motion to determine whether plaintiff was entitled to any attorney's lien or fees, until November 22, 1967, the date on which the trial court vacated the award of $2,500 in fees made on May 26, 1967, it was reasonable for the parties to believe the question of attorney's liens and fees would be disposed of in that prior litigation. Other motions and resulting litigation continued between the parties in the previous litigation until March 20, 1970, and, as previously mentioned, plaintiff filed the original complaint in the instant action on May 24, 1971.

Defendants Hiyane and Acro do not suggest in their written brief any prejudice that they have been subjected to as a result of plaintiff's delay in bringing this action. Defendant Rose submits only that he has moved from Illinois to another State to practice law, and he does not allege that his change in positions was in any way dependent upon or connected to the presentation and adjudication of the legal issues involved between these parties. As we have noted on previous occasions, in an equitable proceeding it is only when by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done had the right been properly asserted that the defense of *laches* will be con-

sidered. *Gaffney v. Harmon*, 405 Ill. 273, 90 N.E.2d 785; *Elliott v. Pure Oil Co.*, 10 Ill. 2d 146, 139 N.E.2d 295; *Rogers v. Barton*, 386 Ill. 244, 53 N.E.2d 862.

■■ Applying the law to the facts at bar, we cannot conclude that plaintiff has been guilty of any significant delay in the assertion of his rights, nor that defendants have presented any substantial injury or prejudice resulting from the limited delay. We therefore find that the trial court abused its discretion in dismissing the complaint on the ground that plaintiff was guilty of *laches.*

As a final ground relied upon in dismissing the amended complaint, the trial court determined that the complaint violated "the provisions of the Civil Practice Act and the Rules of the Supreme Court of Illinois."

While the order is silent as to what specific sections are violated, defendants in their brief submit that plaintiff has failed to comply with sections 33(1) (Ill. Rev. Stat. 1973, ch. 110, par. 33), and 43(1) (Ill. Rev. Stat. 1973, ch. 110, par. 43), of the Civil Practice Act, which provide:

> "§33. Form of pleadings. (1) All pleadings shall contain a plain and concise statement of the pleader's cause of action, counterclaim, defense, or reply. The common counts shall not be used.
>
> (2) Each separate claim or cause of action upon which a separate recovery might be had shall be stated in a separate count or counterclaim, as the case may be  *  *  *.
>
> *  *  *
>
> §43. Separate counts and defenses. (1) Parties may plead as many causes of action, counterclaims, defenses, and matters in reply or rejoinder as they may have, and each shall be separately designated and numbered."

■■ With regard to section 33(1) of the Civil Practice Act, defendants contend that plaintiff's 39-page complaint is neither a plain nor concise statement of the pleader's cause of action. We conclude that in light of the complexities and extended duration of previous litigation between these parties, plaintiff is at most guilty of excessive verbosity in his complaint. However, it is well established that allegations constituting mere surplusage in a complaint shall be disregarded if plaintiff has alleged facts sufficient to constitute a cause of action. (*Roberts v. Hayes*, 284 Ill. App. 275, 1 N.E.2d 711; *Denton v. Midwest Dairy Products Corp.*, 284 Ill. App. 279, 1 N.E.2d 807; *Hiner v. Richter*, 51 Ill. 299.) The essential test of a complaint is that it has informed defendant of a valid claim under a general class of cases of which a court has jurisdiction, as distinguished from a complaint which states no cause of

action. (*Irving v. Rodriquez*, 27 Ill. App. 2d 75, 169 N.E.2d 145.) As dictated under section 42(2) of the Civil Practice Act, "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." (Ill. Rev. Stat. 1973, ch. 110, par. 42.) As we have previously determined in this opinion, plaintiff has alleged sufficient facts constituting a cause of action either in chancery or law. Any averments that were unnecessary and immaterial to establishing plaintiff's cause of action, and therefore constituting surplusage, should merely have been disregarded, rather than being utilized as a ground for dismissing the amended complaint.

Defendants also contend that sections 33(2) and 43(1) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, pars. 33 and 43), were violated by plaintiff's pleading multiple causes of action without separately designating and numbering each cause of action in an individual count.

As noted in the Historical and Practice Notes of Smith-Hurd Illinois Annotated Statutes accompanying both sections 33(2) and 43(1), these sections must be construed in combination with Supreme Court Rule 135(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 135), which provides:

> "(a) *Single Equitable Cause of Action.* Matters within the jurisdiction of a court of equity, whether directly or as an incident to other matters before it, or which an equity court can hear so as to do complete justice between the parties, may be regarded as a single equitable cause of action and when so treated as a single cause of action shall be pleaded without being set forth in separate counts and without the use of the term 'count'."

In *Nance v. Donk Brothers Coal & Coke Co.*, 13 Ill. 2d 399, 401, 151 N.E.2d 97, our Supreme Court discussed the relationship between the provisions at issue, and stated in language we deem applicable to the case at bar:

> "Defendant contends, however, that count 5 is formally defective because section 33 of the act provides that 'Each separate claim or cause of action upon which a separate recovery might be had shall be stated in a separate count * * *.' (Ill. Rev. Stat. 1957, chap. 110, par. 33(2).) This contention overlooks the fact that steps were taken at the outset, in the rules adopted by this court when the Civil Practice Act became effective, to prevent the importation into equitable actions of the common-law practice of pleading by counts. To that end Rule 10 [the predecessor of Supreme Court Rule 135(a)] expressly provides that a single equitable cause of action 'shall be pleaded without being set

forth in separate counts and without the use of the term "count;" * * *.' (Ill. Rev. Stat. 1957, chap. 110, par. 101.10.) The plaintiffs may have erred under Rule 10 by labeling the divisions of their complaint as 'counts.' They did not err by failing to divide their count 5 into further counts."

■■ We similarly conclude that plaintiff was not obligated as a matter of law to allege multiple causes of action under separate counts, and the trial court erred in concluding that separate counts were required in a chancery proceeding. In reviewing plaintiff's amended complaint, we find no violations of the Civil Practice Act or Supreme Court Rules which would provide the basis for dismissing the complaint with prejudice.

We hold that the first amended complaint alleges a *prima facie* cause of action, and therefore the complaint should be answered.

Based upon the aforementioned reasons, the order striking the first amended complaint and dismissing the action with prejudice is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

LORENZ, P. J., and SULLIVAN, J., concur.